STATE MINERAL LEASE COMMISSION *v.* LAWRENCE *et al.*

(Division B. Dec. 3, 1934. Suggestion of Error Overruled Dec. 17, 1934.)

[157 So. 897. No. 31468.]

**W. W. Pierce**, Assistant Attorney-General, for appellant.

**W. H. Hewitt** and **Earl Brewer**, both of Jackson, for appellees.

Argued orally by **W. W. Pierce**, for appellant, and by **W. H. Hewitt**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

The complainants, appellees here, filed their bill in the chancery court alleging that they are the rightful owners of the parcel of land described in the bill; and they deraigned their title thereto by an unbroken chain of conveyances from and including the United States down to themselves. The bill further alleged that the state mineral lease commission, created under chapter 114, Laws 1932, held of record certain deeds of conveyance which are void and of no effect except to cast clouds, doubts, and suspicions upon the true title of complainants; and the bill set out in detail the deeds so held by the commission and the reasons in point of fact which disclosed their invalidity. The members of the com-

mission were made parties defendant, and they appeared and answered. They incorporated in their answer a demurrer upon the ground that the commissioners, in holding the title asserted by them, hold only for the state and as its officers an agents; that they hold or assert no title or claim in or for themselves, and that the suit is therefore one against the state, which has not consented that a suit of this character may be brought against it.

The chancellor overruled the demurrer, heard the case on its merits, found from ample proof that the complainants are the true owners, that the title held in the name of the commissioners is without validity, and awarded the relief prayed in the bill, which was not the broad relief of confirmation of title as against all persons or claimants, but to cancel the deeds held by the commissioners as clouds upon the true title of the complainants; and the commission appeals, and presents as the sole ground of alleged error that the court was without jurisdiction to entertain the suit.

There is no proposition of law which is better settled than the general rule that a sovereign state and its political subdivisions cannot be sued in the courts except upon the express statutory consent of that state. Numerous decisions of this court to that effect may be cited; but it is enough to note that this court, in banc, in a recent case, State v. Woodruff (Miss.), 150 So. 760, has so held; and therein overruled a previous decision which had adjudicated that such consent could be worked out of a statute by implication, when express consent was absent from the terms of that statute.

But the rule applies only when the state or its subdivision is actually made a party upon the record, or is actually necessary to be made a party in order to furnish the relief demanded by the suit. It does not apply when the suit is against an officer or agent of the state, and the relief demanded by the suit requires no affirmative official action on the part of the state nor the

affirmative discharge of any obligation which belongs to the state in its political capacity, even though the officers or agents who are made defendants disclaim any personal interest in themselves and claim to hold or to act only by virtue of a title of the state and as its agents and servants.

Thus it will be found, as illustrative of what has been above said, that nearly all the cases, wherein the rule of immunity from suit against the state, or a subdivision thereof, has been applied and upheld, are those which demanded a money judgment, and wherein the discharge of the judgment, if obtained, would require an appropriation or an expenditure therefrom, which being legislative in its character is a province exclusively of the political departments of the state. And in the less frequent number of cases where no money judgment is demanded, and the rule of immunity is still upheld, it will be found in them that the relief demanded would be, nevertheless, to require of the state or its political subdivision the affirmative performance of some asserted obligation, the nature of which, and the process of its discharge, belong to the state in its political capacity.

When, therefore, officers or agents of the state, although acting officially and not as individuals, seize the private property of a citizen, the state having no valid right or title thereto, or trespass upon that property or damage it, the jurisdiction of the courts to eject the officers or agents, or to enjoin them from further trespass or damage, in a suit by the owner against the officers or agents, is as well settled in the jurisprudence of this country as is the general rule first above mentioned; for in such a suit no relief is demanded which requires any affirmative action on the part of the state. Such a suit is only to the end that the officers and agents of the state stay off the private property of the citizen and cease to damage that property, the state having no right or title thereto.

Of the many decisions which have upheld the jurisdiction of the courts, in the situation stated in the foregoing paragraph, perhaps the case most noteworthy is United States v. Lee, 106 U. S. 199, 1 S. Ct. 240, 27 L. Ed. 171, the facts of which were that, acting under a void title, the military authorities, in obedience to an order of the President, seized the Lee estate, known as Arlington, situated across the river from the national capitol, and converted the property into a military station and a national cemetery. Suit was brought by the owner to eject the officers, and the federal Supreme Court sustained the suit, although it was defended therein with a determined persistency that the suit was against the government, and therefore could not, and ought not, be maintained. Another leading case is Weyler v. Gibson, 110 Md. 636, 73 A. 261, 17 Ann. Cas. 731, wherein an extension of the state penitentiary was so constructed as to occupy in part a strip of land privately owned. The owners brought an action of ejectment against the warden and directors of the state penitentiary and prevailed against the defense that the state could not be sued.

It is not necessary to make a parade of further cases on this subject. They may be found collected in the annotations to 25 R. C. L., p. 414 and 59 C. J., pp. 310-312. Above all these, and as the final authority to us, is the principle made mandatory by section 17, Constitution 1890, that private property shall not be taken or damaged for public use except on compensation therefor being first paid. If the state could withhold its consent to be sued and its officers and agents could take or damage private property and claim entire immunity, then the constitutional section would be stripped of its obligatory force and would be reduced to the poor estate of a mere advisory declaration to be obeyed only at option.

The officers and agents of the estate have not taken actual possession of the property in issue in this case, nor have they trespassed upon it in a physical sense. The

further question arises, then, whether the harm or injury which they do by the holding of void deeds to the property is an injury of a sufficiently substantial nature as to admit a suit to cancel clouds within the field wherein suits against state agents or officers are cognizable. Cancellation of instruments, including those which are clouds upon title, is an ancient feature of equity jurisdiction; so that it has long been settled that the holding of such outstanding, adverse, invalid instruments is a civil wrong of a justiciable nature. The enactment of the section of the statutes which is now section 404, Code 1930, merely gave firmness of form and some additional breadth to that ancient jurisdiction. And since that section authorizes the rightful owner to bring suit to cancel invalid deeds, or any other invalid claim of title, against any person who holds or pretends to hold any such invalid deeds or claims of title, and since the officers sued here are natural persons, and are sued as individuals, the state whom they represent not being sued, there seems to be no grounds for doubt that they are such persons as may be made defendants under the statute, and without the necessity of any aid from section 1381, Code 1930, which broadly defines the term "person" when used in general statutes throughout the Code.

It may be said, however, as has sometimes been contended in suits of this nature, that, although the state is not made a party, for which reason the state is not bound to the consequences of res adjudicata by any decree that was or may be made, the real or substantial interest, so far as any defendants to the suit are concerned, is that of the state and that a suit such as this cannot be maintained in equity because of the rule that equity will not proceed until all parties whose interests will be substantially affected by the decree have been brought before the court. This objection was made and answered in an equity case of the general character which

we here have before us, i. e., Osborn v. Bank, 9 Wheat. 738, 842, 6 L. Ed. 204, 229, quoted with approval in United States v. Lee, supra, wherein Chief Justice MARSHALL for the court said: "But if the person who is the real principal, the person who is the true source of the mischief, by whose power and for whose advantage it is done, be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles to say that the laws could not afford the same remedies against the agent employed in doing the wrong which they would afford against him could his principal be joined in the suit."

We conclude, therefore, that the chancery court was correct in entertaining jurisdiction and in awarding the relief sought.

Affirmed.