STATE *et al. v.* SANDERS *et al.*

(In Banc. May 24, 1948.)

[35 So. (2d) 529. No. 36780.]

476

**Greek L. Rice,** Attorney General, by **John E. Stone,** Assistant Attorney General, for appellants.

Buchanan & Montgomery, of Laurel, for appellees.

Garner **W. Green** and **Irwin W. Coleman,** both of Jackson, and **Archie B. Gray,** of Houston, Tex., for appellee, Gulf Refining Company.

482

Argued orally by **J. R. Buchanan** and **Garner Green**, for appellees.

**McGehee, J.,** delivered the opinion of the court.

The primary, if not the controlling, question argued on this appeal by the appellants is whether or not the suit will lie against the State in its sovereign capacity, or against its State Land Commissioner, who has jurisdiction over the public lands, since it is contended by them that the State has not given the express consent required for the filing of a suit of the character hereinafter set forth.

The sole heirs at law of D. R. Sanders, deceased, are shown herein to be the true, legal, and equitable owners of the SE¼ of Sec. 18, Township 9, Range 10 W., in Jones County, Mississippi, subject to an oil, gas and mineral lease thereon now owned by the Gulf Refining Company. They all filed their bill of complaint in this cause on May

20, 1947, to quiet and confirm their title and the said mineral lease as against the Board of Supervisors of Jones County, the State of Mississippi in its sovereign capacity, and W. L. McGahey, as State Land Commissioner, and asked for the cancellation of any purported claims of the said defendants as clouds upon the title of the said true owners. The bill of complaint also contains a prayer for general relief.

The complainants set forth a full, complete, and perfect deraignment of title, all appearing of record, from the United States Government down to and including the said D. R. Sanders, deceased, who died intestate after having executed the lease now owned by the Gulf Refining Company, one of the said complainants herein.

It is recognized, however, in the bill of complaint that on March 22, 1867, one Joel E. Welborn, a former Swamp Land Commissioner, was adjudged and decreed to have fraudulently obtained from the State of Mississippi the Swamp Land patent to this and nearly 100,000 acres of other land in Jones County after it had been first patented to the State pursuant to the Act of Congress of September 28, 1850. But it was further shown that at the time of the filing of the suit against the said Welborn in said County by the Board of Police thereof on September 27, 1859, the said Welborn had previously conveyed the E½ of the said SE¼ to A. B. Fall by a deed duly executed and recorded on October 7, 1857, and that he had conveyed the W½ thereof to Williams Andrews by a deed duly executed and recorded on November 26, 1858; that the said grantees were innocent purchasers for value of said land without notice of the fraud practiced by the said Welborn on the State when he procured his Swamp Land patent to this land during the year 1855; that neither Fall nor Andrews were parties to this suit; and that they were not, therefore, bound by the decree rendered in the said cause insofar as it attempted to cancel the patent to the said SE¼ of Sec. 18, Township 9 North, Range 10 West.

Moreover, it was further shown by the bill of complaint, and not denied in the answer of the State and its land commissioner, that thereafter, on October 20, 1881, the W½ of the said SE¼ was conveyed by the State under a Swamp Land patent to A. B. Fall, and that the E½ was conveyed on that date under such a patent to C. M. Herrington, all pursuant to Chapter 14 of the Acts of the State Legislature enacted on February 1, 1877, authorizing the sale of swamp lands of the State then "remaining unsold." That thereafter Fall conveyed his part of the land to Herrington, and the title then passed from him through mesne conveyances, all of which are likewise of record, until it became vested in the said D. R. Sanders, deceased. Therefore, it will be seen that any right or title that may have inured to the State by virtue of the decree in the suit of the Board of Police v. Welborn on March 22, 1867, was divested under the Swamp Land patents of October 20, 1881, in favor of the said Fall and Herrington, respectively, since the validity of the Act of the Legislature of February 1, 1877, authorizing the sale of swamp lands then remaining unsold is not challenged, nor is it pointed out to us either in the record or the briefs that there is any defect or illegality whatsoever in connection with the issuance of the said two patents of October 20, 1881.

The State merely claims that it again became vested with the title to this land under and by virtue of the decree in the suit of the Board of Police v. Welborn. That decree directed Welborn to convey the land to the complainant Board of Police of Jones Co., which was not done. The State was not a party to that suit, and the County was only entitled to the proceeds from any sale or resale of the land and to be used for the purposes provided for by the Act of Congress of September 28, 1850. But be that as it may, no appeal is taken from the decree in the present suit wherein the title of the complainants was quieted and confirmed as to the Board of Super-

visors of Jones County, successor in office to the said Board of Police; and insofar as the State is concerned the land was later conveyed by it during the year of 1881 to the predecessors in title of the complainants as aforesaid.

Following the rendition of the decree in the suit against Welborn, the legislature by an Act of April 29, 1871, provided for the sale of this and other lands, and one Amos Deason was appointed as Swamp Land Commissioner to make said sales. He was enjoined from doing so by A. B. Fall and others on the ground that they were innocent purchasers from Welborn prior to the filing of the suit against him in 1859 and for other causes assigned. That injunction suit was not tried and the writ of injunction which was issued against said Deason was never dissolved, except by a voluntary dismissal of the suit by the complainants. It is contended that since the decree of dismissal does not provide that it was done "without prejudice," the suit was res judicata as to any rights now claimed through said A. B. Fall and William Andrews. However, we think that whatever may have been the effect of that decree of dismissal as to the rights claimed by Fall and others at that time is immaterial in the present suit, for the reason that the complainants herein are entitled to predicate their claim of title on the two patents issued by the State on October 20, 1881, in favor of Fall and Herrington, respectively.

It is also alleged and shown that the land in controversy was sold to the State for taxes in 1932, and again in 1934, while owned by and assessed to D. R. Sanders, and that thereafter, in 1939, a forfeited tax land patent was issued by the State to the said D. R. Sanders, now deceased. But the bill of complaint does not seek to confirm the title of the complainants under and by virtue of said patent, but, on the contrary, it alleges that the said tax sales were void and that the patent based thereon was likewise void on account of the invalid assessment

on which said sales were made. Therefore, Chapter 309, Laws of 1940, Sections 1315 to 1322, inclusive Code 1942, has no application herein on the right to sue the State, since the complainants are claiming no title under a patent for lands forfeited to the State for the non-payment of taxes. Their theory is that no title passed to the state or to the patentee under such tax sales.

No good purpose would be served by setting forth in this opinion the facts which rendered the said assessments wholly void. The objections thereto are such as have been repeatedly adjudged in our former decisions to be well taken.

The proof discloses that the complainants and their predecesors in title had been in continuous, open, notorious, and and adverse possession of this land since the year 1881 and long prior thereto, and it is agreed that the records disclose the payment of taxes thereon at least for the period from 1895 to 1930, and that the amount paid for the patent in 1939 is sufficient to cover all taxes from 1930 to that date, when D. R. Sanders resumed payment of the taxes each year.

Thus it will be seen, both from the deraignment of title hereinbefore set forth and from the proof adduced at the trial, that the State has no right, title, or interest whatsoever, either legal or equitable in the lands in controversy; that on this record no case is presented which would have rendered it necessary for the State in its sovereign capacity to be made a defendant in this suit, except upon the theory that if the tax sales of 1932 and 1934 had been found to be valid, there would have been left the possibility, if not the probability, of the State being able to claim that it still owns the land by reason of some failure on the part of D. R. Sanders to comply with the law in the procurement of his patent thereto in 1939. And since he was in exclusive possession of said lands at all times subsequent to such tax sales, the two-year limitation, prescribed by Chapter 196, Laws of 1934,

Section 717, Code 1942, on his right to sue for the cancellation of the State's alleged title on account of any defects, irregularities and illegalities in the said tax sales was not barred when the suit was filed.

Upon the ground last above stated, the State and its land commissioner concede on this appeal that the complainants "obtained jurisdiction below for the purpose of setting aside the tax sales complained of in the bill of complaint" and they say that it was for this reason that a special demurrer rather than a general demurrer was interposed to the jurisdiction. In other words, the appellants concede that the appellees had the right to bring this suit to cancel any claim that the State may have had on account of the said tax sales, but they deny that this carries with it the right to have their basic title, as deraigned down to D. R. Sanders from the Swamp Land patent issued to the said Joel E. Welborn and those later issued to A. B. Fall and C. M. Herrington, confirmed and quieted without an express statutory consent given by the State in that behalf.

The appellant, W. L. McGahey, State Land Commissioner, was evidently made a party defendant to the suit because of the fact that his refusal, which was based on the advice of the Attorney General pending further investigation of the facts of record, to disclaim on behalf of the State any right, title or interest in the land involved, was considered to be equivalent to a claim of the land on his part as such land commissioner, such as would have the effect of casting a doubt or suspicion upon the title of the complainants and so as to entitle them to have the same removed as a cloud thereon by a decree of the court, and to cancel and documentary evidence of title appearing of record in his office as a claim by the State to said land.

It being conceded by the appellants, as hereinbefore stated, that this suit will lie against the State under Chapter 196, Laws of 1934, Sec. 717, Code 1942, to the

extent of permitting the complainants to at least have their title confirmed and quieted insofar as the tax sales of 1932 and 1934 are concerned, if same are void, and it otherwise appearing that at the time of the filing of this suit the records disclosed a good and perfect title then vested in the complainants, the remaining question is whether or not they were entitled to set forth in their bill of complaint the matters of record hereinbefore set forth which constitute the deraignment of their title in order that the court could determine whether or not they were entitled to have the same quieted and confirmed in the event it should find that the said tax sales were void. In this connection, Section 1325, Code 1942, expressly provides, among other things, as follows: "In bills to confirm title to real estate, and to cancel and remove clouds therefrom, the complainant must set forth in plain and concise language the deraignment of his title; and a mere statement therein that complainant is the real owner of the land shall be insufficient, unless good and valid reason be given why he does not deraign his title; . . ."

We are, therefore, of the opinion that if the court had jurisdiction of the suit to cancel the said tax sales and to quiet and confirm the title of complainants insofar as these sales were concerned, it would follow that in such a proceeding the court would likewise have jurisdiction to cancel any other alleged outstanding interest claimed by the State in the same land since "Equity delights to do complete justice and not by halves," and remove other clouds represented by a claim or claims of the state equally unfounded, and to thereupon inquire into and adjudicate the fact of whether or not those asking for relief had shown a good title in themselves that could be quieted and confirmed under the requirements of said Section 1325, Code 1942, supra. Griffith's Chan. Prac. Sec. 36.

While the case of State Mineral Lease Commission et al. v. Lawrence et al., 171 Miss. 442, 157 So. 897, is not directly in point on its particular facts, we think that the

principle announced in that case and under the authorities therein cited is controlling as to the right to sue for the cancellation of any claim being asserted on behalf of the State by the Land Commissioner's office, as an agency of the State; and that what is there said is at least very persuasive, though not controlling, on the question of the right to sue the State in its sovereign capacity in a case of the character herein presented. This is true aside from the right to sue the State which would seem to follow as an incident to the right of obtaining full relief in the suit to quiet and confirm the title as to the two tax sales involved under said Chapter 196, Laws of 1934, Sec. 717, Code 1942, supra, in the light of the said Section 1325, Code 1942, from which we have hereinbefore quoted.

In the case above cited, the Court, after stating the general rule that a sovereign state and its political subdivisions cannot be sued in the courts except upon the express statutory consent of the state, as held in State v. Woodruff, 170 Miss., 744, 150 So. 760, therein declared that "It does not apply when the suit is against an officer or agent of the state, and the relief demanded by the suit requires no affirmative official action on the part of the state nor the affirmative discharge of any obligation which belongs to the state in its political capacity, even though the officers or agents who are made defendants disclaim any personal interest in themselves and claim to hold or to act only by virtue of a title of the state and as its agents and servants. Thus it will be found, as illustrative of what has been above said, that nearly all the cases, wherein the rule of immunity from suit against the state, or a subdivision thereof, has been applied and upheld, are those which demanded a money judgment, and wherein the discharge of the judgment, if obtained, would require an appropriation or an expenditure therefrom, which being legislative in its character is a province exclusively of the political departments of the state. And in the less frequent number of cases where no money

judgment is demanded, and the rule of immunity is still upheld, it will be found in them that the relief demanded would be, nevertheless, to require of the state or its political subdivision the affirmative performance of some asserted obligation, the nature of which, and the process of its discharge, belong to the state in its political capacity.'' [171 Miss. 442, 157 So. 898.]

Thus it will be seen that the said Mineral Lease Commission case would sustain the right here to sue the State Land Commissioner for the cancellation of any claim that he may be making in regard to the land in controversy, in the exercise of his jurisdiction over the public lands on the theory that this land belongs to the State by virtue of the cancellation of the original patents thereto issued to Joel E. Welborn in 1855; but, the holding in that case recognizes that the rule announced in the Woodruff case, supra, is applicable when the State in its sovereign capacity ''is actually made a party upon the record, or is actually necessary to be made a party in order to furnish the relief demanded by the suit.'' In the instant case the State is not actually shown to be a necessary party in order to entitle the complainants to a decree in quieting and confirming their title, except as to the relief sought by the cancellation of the two tax sales, since it had already patented the land away three times and the validity of the second one is not here challenged, but it ''is actually made a party upon the record'' for all the purposes of the suit.

At any rate, we hold that the suit in the instant case can be maintained against the State in its sovereign capacity for obtaining full relief as herein sought, and we do so as to the State itself solely because of the right which is conferred in that behalf by Chapter 196, Laws of 1934, Section 717, Code 1942, and from which consent to sue we thing it follows that under Section 1325, Code 1942, the complainants are not only authorized, but are required to set forth in their bill a sufficient deraignment

of title in themselves to enable the court to determine whether or not they are entitled either to have their title quieted and confirmed or to cancel and remove clouds therefrom, without regard to whether the title involved in the tax sales remained after such sales in the former owner, D. R. Sanders, because of their invalidity, or passed to him under the forfeited tax land patent issued by the State in his favor on the theory of the validity of the assessments and sales as claimed by the State.

But let it be understood that the decision in the case of State Mineral Lease Commission et al. v. Lawrence et al., supra, is not to be hereby extended so as to permit the State to be sued in its sovereign capacity by any person claiming title through a Swamp Land patent and who seeks to have the same quieted and confirmed, unless the right to do so can also be asserted either under Chapter 196, Laws of 1934, Section 717, Code 1942, or Chapter 309, Laws of 1940, Sections 1315 to 1322, inclusive, Code 1942. However, Chapter 309, Laws of 1940, which is not applicable to this case, expressly provides that "No deraignment of complainant's title in such cases (brought under such statute) shall be required," although such deraignment is necessary under said Chapter 196, Laws of 1934, there being no provision therein to the contrary, because the general statute, Section 1325, Code 1942, would in such case control.

For the reasons hereinbefore stated, we are of the opinion that the action of the trial court in overruling the special demurrers and in rendering a decree on the merits canceling any claim that may be asserted either by the State or its Land Commissioner as clouds upon the title of the complainants and quieting and confirming such title as against the said defendants should be affirmed.

Affirmed.