342 So.2d 290 (1976)
Jack K. REED, Superintendent, Mississippi State Penitentiary
v.
Monroe H. EVANS.
No. 49075.
Supreme Court of Mississippi.
August 24, 1976.
Rehearing Denied October 12, 1976.
A.F. Summer, Atty. Gen., by James M. Ward, Special Asst. Atty. Gen., Jackson, for appellant.
Ronald Reid Welch, Herman (Tex) Wilson, Jackson, for appellee.
Before GILLESPIE, SMITH and WALKER, JJ.
SMITH, Justice, for the Court.
The State of Mississippi appeals from the action of the Circuit Court of Sunflower County which would have required payment to appellee, Monroe Harold Evans, of $314.66 from State funds.
In 1973, while Evans was an inmate of Camp 8 of the penitentiary at Parchman, Camp 8 was made a "close confinement camp" under special rules and regulations. A "shakedown" of the Camp followed, in the course of which all personal property of the convicts was inventoried and removed. An electric fan, a portable radio, an electric stencil, several shirts, a coffeepot, a portable typewriter, and a radio tape player, were taken from Evans. An official receipt was issued to him for these articles. The receipt introduced into evidence, bears a stipulation "O.K." and "not returned." The record shows that these notations were made in the course of an investigation and do not indicate a return of the property to Evans.
All of the personal property, including that of Evans, was stored in the boiler room at the penitentiary. A few days later, the circumstances which had brought about the above measures, no longer existing, penitentiary officials undertook to return to the prisoners the articles which had been taken from them. It is stipulated in the record in this case that the radio, tape player and typewriter were not returned to Evans.
At the trial of the case the court found that the typewriter, radio, tape player and coffeepot had not been returned to Evans. The record makes it clear that these articles had disappeared while in official custody of penitentiary authorities and could not be found. There seems to be no question but that Evans was permanently deprived of his property through negligence on the part of penitentiary employees who failed to make any provision whatever for its protection from theft or loss. This is not controverted by the State.
On appeal there is only one assignment of error. The circuit court erred in directing payment to Evans of $314.66, the undisputed value of the property, from public funds *291 appropriated by the State of Mississippi for the express purpose of operating the penitentiary since such an award is barred by the sovereign immunity of the State of Mississippi, the State's consent to the suit not having been obtained.
This Court has said:
That an arm or agency of the state cannot be sued except by express statutory or constitutional authority has been too long and too well settled to be further debatable now, ... .
(Smith v. Doehler Metal Furniture Co., 195 Miss. 538, 545, 15 So.2d 421 (1943).
In the case above cited [State Mineral Lease Commission et al. v. Lawrence et al., 171 Miss. 442, 157 So. 897 (1934)], the Court after stating the general rule that a sovereign state and its political subdivisions cannot be sued in the courts except upon the express statutory consent of the state, as held in State v. Woodruff, 170 Miss. 744, 150 So. 760, therein declared that "It does not apply when the suit is against an officer or agent of the state, and the relief demanded by the suit requires no affirmative official action on the part of the state nor the affirmative discharge of any obligation which belongs to the state in its political capacity, even though the officers or agents who are made defendants disclaim any personal interest in themselves and claim to hold or to act only by virtue of a title of the state and as its agents and servants. Thus it will be found, as illustrative of what has been above said, that all the cases, wherein the rule of immunity from suit against the state, or a subdivision thereof, has been applied and upheld, are those which demanded a money judgment, and wherein the discharge of the judgment, if obtained, would require an appropriation or an expenditure therefrom, which being legislative in its character is a province exclusively of the political departments of the state. And in the less frequent number of cases where no money judgment is demanded, and the rule of immunity is still upheld, it will be found in them that the relief demanded would be, nevertheless, to require of the state or its political subdivision the affirmative performance of some asserted obligation, the nature of which, and the process of its discharge, belong to the state in its political capacity."
[171 Miss. 442, 157 So. 898]. [State v. Sanders, 203 Miss. 475, 490-491, 35 So.2d 529, 532-533 (1948)].
In Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the United States Supreme Court quoted Hamilton in Federalist No. 81:
"It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. This is the general sense and the general practice of mankind; and the exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union. Unless, therefore, there is a surrender of this immunity in the plan of the convention, it will remain with the states, and the danger intimated must be merely ideal. The circumstances which are necessary to produce an alienation of state sovereignty were discussed in considering the article of taxation, and need not be repeated here. A recurrence to the principles there established will satisfy us, that there is no color to pretend that the state governments would, by the adoption of that plan, be divested of the privilege of paying their own debts in their own way, free from every constraint but that which flows from the obligations of good faith. The contracts between a nation and individuals are only binding on the conscience of the sovereign, and have no pretension to a compulsive force. They confer no right of action independent of the sovereign will. To what purpose would it be to authorize suits against States for the debts they owe? How could recoveries be enforced? It is evident that it could not be done without waging war against the contracting state, and to ascribe to the federal courts by mere implication, and in destruction of a pre-existing right of the state governments, a power which would *292 involve such a consequence, would be altogether forced and unwarrantable."
(134 U.S. at 13, 10 S.Ct. at 506, 33 L.Ed. at 846).
After quoting extensively from Madison and Marshall, the Court, in upholding the sovereignty doctrine, said:
It seems to us that these views of those great advocates and defenders of the Constitution were most sensible and just; and they apply equally to the present case as to that then under discussion... .
.....
The suability of a state, without its consent, was a thing unknown to the law. This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted.
(134 U.S. at 14-16, 10 S.Ct. at 507, 33 L.Ed. at 847).
The Court quoted Chief Justice Taney in Beers et al. v. Arkansas, 61 U.S. 527, 529, 20 How. 527, 529, 15 L.Ed. 991 (1858):
It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege and permit itself to be made a defendant in a suit by individuals, or by another state. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it... . The prior law was not a contract. It was an ordinary act of legislation, prescribing the conditions upon which the state consented to waive the privilege of sovereignty. It contained no stipulation that these regulations should not be modified afterwards if, upon experience, it was found that further provisions were necessary to protect the public interest; and no such contract can be implied from the law, nor can this court inquire whether the law operated hardly or unjustly upon the parties whose suits were then pending. That was a question for the consideration of the legislature. They might have repealed the prior law altogether, and put an end to the jurisdiction of their courts in suits against the state, if they had thought proper to do so, or prescribe new conditions upon which the suits might still be allowed to proceed. In exercising this power the state violated no contract with the parties." The same doctrine was held in Railroad Co. v. Tennessee, 101 U.S. 337, 339; Railroad Co. v. Alabama, 101 U.S. 832; and In re Ayers, 123 U.S. 443, 505, 8 Sup.Ct.Rep. 164 [31 L.Ed. 216].
(134 U.S. at 17-18, 10 S.Ct. at 508, 33 L.Ed. at 848).
And concluded:
To avoid misapprehension it may be proper to add that, although the obligations of a state rest for their performance upon its honor and good faith, and cannot be made the subjects of judicial cognizance unless the state consents to be sued or comes itself into court, yet, where property or rights are enjoyed under a grant or contract made by a state, they cannot wantonly be invaded. Whilst the state cannot be compelled by suit to perform its contracts, any attempt on its part to violate property or rights acquired under its contracts may be judicially resisted, and any law impairing the obligation of contracts under which such property or rights are held is void and powerless to affect their enjoyment.
It is not necessary that we should enter upon an examination of the reason or expediency of the rule which exempts a sovereign state from prosecution in a court of justice at the suit of individuals. This is fully discussed by writers on public law. It is enough for us to declare its existence. The legislative department of a state represents its polity and its will, and is called upon by the highest demands of natural and political law to preserve justice and judgment, and to *293 hold inviolate the public obligations. Any departure from this rule, except for reasons most cogent, (of which the legislature, and not the courts, is the judge,) never fails in the end to incur the odium of the world, and to bring lasting injury upon the state itself. But to deprive the legislature of the power of judging what the honor and safety of the state may require, even at the expense of a temporary failure to discharge the public debts, would be attended with greater evils than such failure can cause.
(134 U.S. at 20-21, 10 S.Ct. at 509, 33 L.Ed. at 849).
In Principality of Monaco v. The State of Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934), the United States Supreme Court, through Chief Justice Hughes, quoted extensively from the Hans case, supra, and outlined five different questions of sovereign immunity under the Federal Constitution involving a State of the Union.
The Court distinguished suits brought against a State of the Union (a) by another State of the Union; (b) by the United States; (c) by a citizen of another State or by citizens and subjects of a foreign State; (d) by citizens of the same State or a federal corporation; and (e) by foreign states.
Under the Federal Constitution a suit against a State could be brought in the first two categories (a and b) in federal court without the consent of the defendant State but not in the last three mentioned categories (c, d and e). See generally consent to Suit Against A State, 42 A.L.R. 1464, 50 A.L.R. 208.
Evans has had outstanding representation in the case. The brief in Evans' behalf reflects thorough research of the authorities and puts forward several ingenuous and attractive arguments. The case was also ably argued orally.
However, we are without power to grant the relief sought. In Ayres v. Board of Trustees of Leake County Agricultural High School et al., 134 Miss. 363, 98 So. 847 (1924), this Court said:
In conferring powers on the boards of trustees of various institutions and governmental agencies the authority to be sued is specifically given in some instances, while in others the Legislature has withheld this authority. Authority to be sued is no more necessary in the case of agricultural high schools than in other governmental agencies of the sovereign state where no such authority exists, and we do not think the grant of this power is necessarily implied from the phrase giving the trustees "full power to do all things necessary to the successful operation of the school." Authority to be sued is not a necessary prerequisite to the successful operation of the school, and, since it is not clear that, in the statute now under review, the Legislature intended to surrender the immunity from suit enjoyed by these governmental agencies we do not think the statute should be extended by construction so as to do so. Only the Legislature can surrender this privilege of the sovereign state and its governmental subdivisions or agencies, and we do not think it has done so in any of the acts affecting the establishment, or the government and control of agricultural high schools.
(134 Miss. at 376-377, 98 So. at 850).
This Court has said further:
... We hold that the state cannot be made liable to suit out of implications gathered from a statute or any group of statutes, but the right to sue the state must be expressly granted by statute, without which express grant no allowance to sue the state exists. .. .
[State v. Woodruff, 170 Miss. 744, 766, 150 So. 760, 762 (1933)].
A state agency is not liable for the negligence of its agents. Curtis v. Mississippi State Highway Commission, 195 So.2d 497 (Miss. 1967).
Under the doctrine of sovereign immunity, the trial court was without power to require payment of the claim from state funds.

*294 A judgment or decree against the state for the payment of money, although entered by its highest court, is not enforceable except by a legislative appropriation. If the case is clear, and there is no available defense to the liability, the court should enter the judgment, although it may be that at the time being it will meet with legislative disobedience. But in order to render such disobedience inexcusable, and therefore improbable, any such judgment should go to the Legislature as an unreserved and solemn recommendation by the court that the liability is fair and free from serious doubt, and that there are no valid defenses known to the law or recognized in equity which the court has failed to discern and to apply. If this were not the course of conduct to be pursued by the court in rendering money judgments against the state, it had as well not rendered them at all. [State v. Woodruff, 170 Miss. at 779, 150 So. at 766 (1933)].
As we have said, there was no defense offered in this case except the State's sovereign immunity from suit. Otherwise, Evans would, under principles of natural justice be entitled to recover. On the basis of the record, it would appear to us that this may be one of those rare cases in which the Legislature might wish to make a special appropriation for the purpose of reimbursing Evans for his loss. This, however, is a matter within the province of the Legislature and is a matter exclusively for its determination.
REVERSED AND JUDGMENT HERE FOR APPELLANT.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.

ON PETITION FOR REHEARING
GILLESPIE, Chief Justice, for the Court.
In the petition for rehearing, Evans' counsel relies solely on the case of Williams v. Walley, 295 So.2d 286 (Miss. 1974), in which this Court stated as follows:
It is next contended that the board of supervisors is protected from suit by the doctrine of governmental immunity. The case of Owens v. Jackson Municipal Separate School District, 264 So.2d 892 (Miss. 1972), relied upon by the board, does not apply to the present case. This is not a mere tort action but one to provide a remedy for a constitutionally guaranteed right. As already stated, when private property is taken without payment therefor, the courts are open to provide a remedy against the sovereign or any of its subdivisions. Otherwise section 17 of the Mississippi Constitution of 1890 would be meaningless. Section 17 guarantees the right, and section 24 of the Constitution assures that the courts are open to provide the remedy. 295 So.2d at 288.
The opinion of Walley stated, "This is not a mere tort action but one to provide a remedy for a constitutionally guaranteed right." In that case, the public authorities removed a fence and took the top soil from land on which Walley had a lease and used the soil in building a public road. The public authorities not only took the property but took it "for public use." The opinion in Walley, in discussing Section 17 of the Constitution of Mississippi, did not use the term "public use" but that was the basis of the decision. Section 17 provides in part: "Private property shall not be taken or damaged for public use, except upon due compensation being first made to the owner... ." (Emphasis added) Public use is used more than once in the section and it is the key word in the section.
In the present case, public officials took Evans' property but they did not take the property for the purpose of using it for any public purpose. Therefore, as pointed out in the original opinion, the taking of Evans' property constituted a tort, or at least the failure to return his property was tortious. But as noted in Walley, Section 17 is not applicable to a "mere tort" action.
For the reasons stated, Williams v. Walley, supra, does not apply to this case, and the Court may not give judgment against the State absent legislative consent.
*295 PETITION FOR REHEARING CONSIDERED EN BANC AND DENIED.
All Justices concur.