608 So.2d 1288 (1992)
Mable PRESLEY, Administratrix of the Estate of Mattie Presley, Deceased, and Charley Earl Presley, Minor Son, Sole Heir, and Wrongful Death Beneficiary of Mattie Presley, Deceased, Margaret Presley and Ruby J. Presley, Jr.
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 90-CC-0644.
Supreme Court of Mississippi.
August 31, 1992.
Rehearing Denied December 3, 1992.
Dissenting Opinion of Denial of Rehearing December 3, 1992.
*1289 Richard T. Phillips, Smith Phillips & Mitchell, Batesville, Barrett J. Clisby, Roberts & Clisby, Oxford, for appellants.
Michael C. Moore, Atty. Gen., Alan M. Purdie and Rickey T. Moore, Sp. Asst. Attys. Gen., Jackson, for appellee.
Karla J. Pierce, Dale Hubbard, Ferrell & Hubbard, Jackson, James E. Holland, Cleveland, Jim P. Brantley, Brantley & Knowles, W. David Watkins, Brunini Grantham Grower & Hewes, Ottowa E. Carter, Jr., Brunini Firm, P. David Andress, Brunini Firm, Jackson, for amicus curiae.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Mable Presley and Charley Earl Presley, administratrix and wrongful death beneficiary, respectively, of Mattie Presley, deceased, have appealed the dismissal of their wrongful death suit against the Mississippi State Highway Commission (Commission) because of sovereign immunity granted the Commission under Miss. Code Ann. § 11-46-1, et seq. (Supp. 1987), the Sovereign Immunity Act. At issue on appeal is the constitutionality of this Act. Ch. 483, Laws 1987, Section 3, codified as 11-46-1, *1290 requires that all claims against the State be governed by case law governing sovereign immunity as it existed immediately prior to our decision in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982). For the reasons stated, we find this portion of the Act unconstitutional, and reverse and remand.

FACTS
October 2, 1987, Mattie Presley was riding as a passenger in a Mercury automobile driven by her mother, Margaret Presley.
At the intersection of Highways 310 and 51 in Como, 310 runs East/West and 51 runs North/South. Prior to that day there had been a traffic light, which had been replaced by stop signs on 310. Because of the curvature widening of 310 just before its entrance into 51, the signs had been placed back at the narrow portion of 310.
The Presley vehicle was headed West on 310 and as it entered 51 was struck by a school bus, crushing its right side. The Mercury caught fire and because Mattie Presley was pinned inside, she was burned to death.
Following the accident the cautionary signs were changed. The Commission installed a four-way flashing red light and concrete islands on which it placed stop signs on 310 closer to the entrance into the intersection with 51.
The suit against the Commission in the Circuit Court of the First Judicial District of Panola County charged negligent design of the warning signs at the intersection.
The Commission filed a Rule 12(b)(6) motion to dismiss, which was sustained by the circuit judge on the ground the Commission was immune from suit.
The Presleys have appealed.

LAW

PART I

A.
We have addressed and applied this Sovereign Immunity Act, Miss. Code Ann. § 11-46-1, et seq., in several cases, namely: Starnes v. City of Vardaman, 580 So.2d 733 (Miss. 1991); McKay v. Boyd Construction Co., Inc., 571 So.2d 916 (Miss. 1990); Employers Ins. of Wausau v. Mississippi State Highway Comm., 575 So.2d 999 (Miss. 1990) cert. denied ___ U.S. ___, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991); Richardson v. Rankin County School District, 540 So.2d 5 (Miss. 1989); Webb v. County of Lincoln, 536 So.2d 1356 (Miss. 1988); Region VII, Mental Health-Mental Retardation Center v. Isaac, 523 So.2d 1013 (Miss. 1988); Strait v. Pat Harrison Waterway District, 523 So.2d 36 (Miss. 1988); Grantham v. Mississippi Dept. of Corrections, 522 So.2d 219 (Miss. 1988) rev'd. sub nom. Sykes v. Grantham, 567 So.2d 200 (Miss. 1990); and State v. Lewis, 498 So.2d 321 (Miss. 1986). This is the first instance, however, in which the constitutionality of the Act has been challenged.
Prior to Pruett, decided November 10, 1982, sovereign immunity in this State, except in the few and limited instances in which it had been waived by statute,[1] was governed by common law, and for the State and all political subdivisions, except for "proprietary" functions of municipalities, was absolute.[2]
*1291 Beginning with County of Yalabusha v. Carby, 6 Miss. (3 Sm. & M.) 529 (1844), this Court recognized a common law sovereign immunity in this State, and this judicially created immunity was firmly established by a long line of our subsequent decisions.[3]
Our discomfort with this judicially-created immunity was first noted in Berry v. Hinds County, 344 So.2d 146 (Miss. 1977), cert. denied 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977), and then again in Jones v. Knight, 373 So.2d 254 (Miss. 1979), although we suggested that the Legislature, not us, was the branch of government to abolish the immunity doctrine.[4]
With the exception of "the historical and well-recognized principle of immunity granted to all legislative, judicial and executive bodies and those public officers who are vested with discretionary authority, which principle of immunity rests upon an entirely different basis," 421 So.2d at 1052, this Court in Pruett firmly and emphatically abolished all judicially-created state and political subdivisions' sovereign immunity theretofore existing under the common law of this state.
In Pruett we noted that, "[f]or a good many years now, state after state has decided that the principle that the King (state) can do no wrong is not a legal principle that should receive blanket application in modern times." Pruett, 421 So.2d at 1047. We then held that "the absolute sovereign immunity doctrine is out of date in modern society and modern legal concepts." Pruett, 421 So.2d at 1047.
Quoting from our previous decision in Mississippi Baptist Hospital v. Holmes, 214 Miss. 906, 55 So.2d 142 (1951), aff'd 214 Miss. 906, 56 So.2d 709 (1952), we noted that "the functions of creating a public policy is primarily one to be exercised by the legislature and not by the courts." Pruett, 421 So.2d at 1051. We then held:
We agree that the time has arrived when this Court should recognize that the judiciary is no longer the branch of government to supervise and control the extent to which persons with rightful claims against the sovereign may propound those claims... . the problem is one our system of government places on the legislative branch.
421 So.2d at 1051.
Pruett, decided November 10, 1982, was made prospective, its mandate applying only to causes of action accruing on or after July 1, 1984. Pruett, 421 So.2d at 1052.
Our decision in Pruett made Mississippi the 45th state to judicially abrogate sovereign immunity.[5] There are many sound reasons why an immunity granted the state or political subdivision should come solely from Legislative enactment. Sovereign immunity is a matter of public policy and our Legislature determines what is in the public interest. Johnson v. U.S., 163 F. 30, 32 (1st Cir.1908); Miss. Baptist Hospital v. Holmes, supra; Albritton v. City of Winona, 181 Miss. 75, 95-96, 178 So. 799, 803 (1938), appeal dismissed, 303 U.S. 627, 58 S.Ct. 766, 82 L.Ed. 1088 (1938). In the granting or withholding of sovereign immunity, there are gradations, competing interests to balance, that of fairness to our citizens and proper functions of state government, and which can only be accomplished by statutory law. As stated in Mayhew, The Abrogation of Sovereign Immunity in Mississippi, 3 Miss.College Law Review 209 at 214 (1983):
[G]overnment provides services that are not generally provided in the private sector such as fire suppression, law enforcement, welfare, streets, sewers, traffic control, and the various inspection services. The private sector determines the viability of services usually on an economic basis; government usually cannot *1292 evaluate its services and their continuance in this manner. In addition, especially as to the state, there is often great geographical diversity in the providing of governmental services. Finally, the legislature must consider the many small governmental entities and their limited resources that exist here in Mississippi. [Footnotes omitted]
3 Miss.College Law Review 209 at 214-215 (1983).
As also noted in this same article:
The legislature must decide whether to treat all the governmental agencies within the state in the same manner or whether to have different rules for the various governmental units... .
The legislature should also review the functions of government within the state to determine if any particular activity of government should be immunized specifically... .
Only by closely reviewing the functions of the various governmental entities can the legislature properly apply the balancing test and make the necessary legislative judgment.
Id. at 218-220.
These are Legislative functions which the courts of this state are neither empowered nor equipped to fulfill. Pruett, supra; Jones v. Knight, 373 So.2d 254, 256 (Miss. 1979).

B. THE LEGISLATIVE RESPONSE
The Legislature enacted Ch. 495, Laws 1984 (Senate Bill No. 2441), approved May 15, 1984. The Act has no title, but is a detailed, all-encompassing enactment covering tort claims against the State and all political subdivisions. Section 1 defines the claims and public entities covered.
Under Section 2, as of July 1, 1985, for the State and October 1, 1985, for all political subdivisions, there is a grant of absolute immunity from all claims defined under Section 1.
Under Section 3, and again as of July 1, 1985, for the state and October 1, 1985, for all political subdivisions, there is a limited waiver of the immunity granted under Section 2.
Section 4 reads in full:
SECTION 4. This act shall apply only to claims that accrue on or after July 1, 1985, as to the state, and on or after October 1, 1985, as to political subdivisions. Claims that accrue prior to July 1, 1985, as to the state or, prior to October 1, 1985, as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity existing prior to July 1, 1985. [Emphasis added]
Section 5 provides that the remedy afforded under the Act is exclusive of all others. Section 6 grants absolute immunity to all public bodies for claims arising from acts of a legislative or judicial nature, and also acts of a discretionary nature.
Sections 7 and 8 give the jurisdiction and venue of courts in which claims are to be filed, and places a two-year limitation period on all claims. Section 9 limits the maximum recovery for any one occurrence to $500,000.
The remaining sections of the Act create a "Tort Claims Fund" in the State treasury, and authorize the purchase of liability insurance, all with the purpose of seeing that adequate funds are secured to insure payment of any recovery had under the Act.
The 1984 Act was codified as Miss. Code Ann. § 11-46-1, et seq., and except for Section 4, we have only given a general overview of this detailed Act encompassing all claims for torts against the state and all political subdivisions.
In 1985, by Ch. 474, Laws 1985 (House Bill No. 983), the Legislature re-enacted the 1984 Act, but again postponed its going into effect until July 1, 1986, for the State and October 1, 1986, for political subdivisions.
Section 12 of the 1985 Act reads in full:
*1293 SECTION 12. Section 4 of Chapter 495, Laws of 1984, is reenacted and amended as follows:
Section 4. This act, being Chapter 495, Laws of 1984, as reenacted and amended by House Bill No. 983, 1985 Regular Session, shall apply only to causes of action that accrue on or after July 1, 1986, as to the state, and on or after October 1, 1986, as to political subdivisions. Causes of action that accrue prior to July 1, 1986, as to the state or, prior to October 1, 1986, as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of House Bill No. 983., 1985 Regular Session.
Again in 1986, by Ch. 438, Laws 1986 (Senate Bill No. 2166), the Legislature essentially re-enacted the previous Acts, but postponed its going into effect until July 1 and October 1, 1987, respectively, for the State and political subdivisions.
Section 6 of the 1986 Act reads in full:
SECTION 6. Section 4 of Chapter 495, Laws of 1984, as amended by Section 12, Chapter 474, Laws of 1985, is amended as follows:
Section 4. This act, being Chapter 495, Laws of 1984, as reenacted and amended by Chapter 474, Laws of 1985, as amended by Senate Bill No. 2166, 1986 Regular Session, shall apply only to causes of action that accrue on or after July 1987, as to the state, and on or after October 1, 1987, as to political subdivisions. Causes of action that accrue prior to July 1, 1987, as to the state or, prior to October 1, 1987, as to political subdivisions, shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
In 1987, by Ch. 483, Laws 1987 (Senate Bill No. 2454), the Legislature once again essentially re-enacted the major portions of the previous enactments, and again postponed its going into effect until July 1 and October 1, 1988, respectively, for the State and political subdivisions. The headnote of the Act, after stating the code sections which are to be amended, gives, inter alia, as its purpose to "extend until July 1, 1988, for the State, and until October 1, 1988, for political subdivisions of the State, the date upon which the immunity of such governmental entities shall be waived," and further "to specify the law that governs causes of action that occur prior to the effective date of the waiver of sovereign immunity contained in Chapter 46, Title 11, Mississippi Code of 1972... ."
Section 3 of the Act reads in full:
SECTION 3. The following provision shall be codified as Section 11-46-6, Mississippi Code of 1972:
11-46-6. This chapter shall apply only to claims or causes of action arising from acts or omissions occurring on or after July 1, 1988, as to the state, and on or after October 1, 1988, as to political subdivisions. Claims or causes of actions arising from acts or omissions occurring prior to July 1, 1988, as to the state, or prior to October 1, 1988, as to political subdivisions, shall not be affected by this chapter but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985. [Emphasis added]
Section 50 of the Act reads in full:
SECTION 50. Section 4, Chapter 495, Laws of 1984, as reenacted and amended by Section 12, Chapter 474, Laws of 1985, as amended by Section 6, Chapter 438, Laws of 1986, which specifies the *1294 causes of action that are covered by Chapter 46, Title 11, Mississippi Code of 1972, and specifies the law that governs causes of action that occur prior to the effective date of coverage of Chapter 46, Title 11, Mississippi Code of 1972, is hereby repealed.
Thus, after the 1987 session, there had been four successive annual sessions of the Legislature in which this full and detailed Act governing sovereign immunity was enacted and re-enacted, but with its application postponed until the year following.[6]

C. LAW TO BE APPLIED BEFORE EFFECTIVE DATES OF ACTS
The provision common to all four acts is that, until they become effective, all claims against the State and political subdivisions "shall not be affected by this act but shall continue to be governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale, 421 So.2d 1046," and relevant statutory law governing sovereign immunity. Miss. Code Ann. § 11-46-6 (Supp. 1981).
We are only concerned here with the mandate of the statute requiring courts, in deciding sovereign immunity questions, to be governed by case law in effect as it existed immediately prior to our decision in Pruett. This imposes upon courts the duty to apply only the case law existing on November 10, 1982.
From this statutory mandate the following may be seen clearly:
First, it requires the court to apply legal principles which this Court specifically rejected in Pruett. And, while it is of course correct that in Pruett we said sovereign immunity was a matter to be determined solely by the Legislature, judicial sovereign immunity was abolished also because the common law does not grant courts the authority to make gradations and exceptions which can only be made by statute.
Second, instead of giving a statutory statement of whether, how or in what manner sovereign immunity shall be applied as it does in the rest of the Act, all authority, under this particular provision, is delegated to the court, the court being told to apply the "case law" on sovereign immunity as it existed on November 10, 1982. The court is not even confined to Mississippi case law. The court is to go beyond the four corners of the statute to find the substantive law governing sovereign immunity, a legislatively imposed responsibility on the court which comes perilously close to delegation to the court the power to legislate on this particular subject, which under our Constitution only the Legislature may do. Miss. Const. Art. IV, § 33. Ogden v. Blackledge, 6 U.S. (2 Cranch) 272, 2 L.Ed. 276 (1804); Case of Hayburn, 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792); Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 42-43, 6 L.Ed. 253 (1825); U.S. v. Ferreira, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852); Buckley v. Valeo, 424 U.S. 1, 120-124, 96 S.Ct. 612, 682-684, 46 L.Ed.2d 659 (1976); U.S. v. Salberg, 287 F. 208, 213 (N.D.Ohio 1923); U.S. v. Fonseca, 686 F. Supp. 296, 298 (S.D.Ala. 1988); Commonwealth v. Franklin, 172 Pa.Super. 152, 92 A.2d 272, 287 (1952).
In In re Shear, 139 F. Supp. 217 (N.D.Cal. 1956), the Court, discussing separation of powers among the three branches of government, stated:
It is one of the fundamental principles of our form of government that the legislative power shall be separated from the judicial power. The power to declare what the law shall be belongs to the legislative branch of the government; the power to declare what the law is, or has been belongs to the judicial branch of the government. (Citations omitted.) Neither of these branches of the government *1295 may invade the province of the other. (Citations omitted.) The courts declare and enforce the law, but they do not make the law. (Citations omitted.) This is for the reason that courts do not have the function of legislating or the power to legislate. (Citations omitted.) The legislative department alone has the duty of making the laws. [Citations omitted.]
In re Shear, 139 F. Supp. at 220.
The Nevada Supreme Court in Galloway v. Truesdell, 83 Nev. 13, 422 P.2d 237 (1967) commenting on the separation of powers held that:
[i]n consonance with the spirit and intent of the foregoing constitutional provisions [Separation of powers], the courts of this state have uniformly held that the Legislature is without power to confer upon courts jurisdiction that is not given or authorized to be given them by the Constitution, and that the Legislature can impose no duties on the judiciary but such as are of a judicial character.
Id., 83 Nev. at 24, 422 P.2d at 245 (quoting Frazier v. Moffatt, 108 Cal. App.2d 379 239 P.2d 123 (1951)).
Third, while delegating to the court the seemingly broad discretion to browse freely throughout case law to pick and choose from whence the substantive law of sovereign immunity shall be applied to a particular case, this mandate contains an ominously restrictive injunction. Only the case law that existed on November 10, 1982, can be applied. Thus, it freezes in time and place the common law as it existed at that particular moment, and tells the court this is the only substantive law it is to apply.
While common law grows and changes slowly, and for the most part imperceptibly, grow and change it must. It is fed on the nutrient of experience. And, while a court may be statutorily mandated to follow the common law principles of interpretation, it cannot  without impinging on its powers  be told to follow the common law and in the same breath also told that the common law it applies cannot change, cannot grow. The judicial function cannot be thus stultified. This is precisely what the courts of this State had been told to do for four successive years when this accident occurred in 1987. The common law was encased and entombed.
Courts cannot pass judgment upon the wisdom, practicality or even folly of a statute. We must follow it unless it clearly impinges upon some Constitutional mandate, and our Constitution neither gives wise statutes passing grades nor flunks the improvident ones. This is solely the prerogative of the people acting through their Legislature. Mississippi Milk Commission v. Vance, 240 Miss. 814, 856, 129 So.2d 642, 661 (1961); Mississippi Fire Ins. Co. v. Planters Bank, 138 Miss. 275, 283, 103 So. 84, 86 (1925); Bobo v. Board of Levee Comm'rs for Yazoo-Mississippi Delta, 92 Miss. 792, 811, 46 So. 819, 823 (1908); Martin v. Dix, 52 Miss. 53, 62 (1876).
Courts are charged, however, to interpret and preserve and protect the provisions of our Constitution, and when a statute violates a Constitutional mandate, our duty is to declare the statute void. Albritton, 181 Miss. at 96, 178 So. at 803.
While the delegation to the court of authority to apply "case law" in determining sovereign immunity, the second problem above noted, raises a serious constitutional question, we need not address whether, if this were the only problem with the Act, it would pass constitutional muster. The third problem is fatal to its validity.
The judicial branch of government is separate and co-equal with the other two branches. Miss. Const. Art. I, § 1, Art. VI, § 144. From ancient times judges have had imposed upon them the sole responsibility of pronouncing the common law. "There is no such thing as construction of the common law. We (the court) do not interpret it; we declare it; we say what it is." Churchill v. Pacific Imp. Co., 96 Cal. 490 at 493, 31 P. 560 at 561 (1892). This function is as vital to our civilized society as statutory law. When a judge pronounces the common law, he must apply the common law as it exists the moment he makes his decision, not as it existed at some time previously. Common law, as *1296 opposed to the law embodied in a statute, is forever changing, albeit for the most part by accretion.
The law encompassed within a statute is contained within its four corners, is limited to that statute. This is the difference between statutory and common law. As a guide to its construction, a court may be told by a statute to apply common law principles in its interpretation, but the court cannot also be told that the common law it applies cannot grow or change with the experience of mankind. Such a mandate suffocates the judicial function. As stated in Thomas M. Cooley, 2 A Treatise on Constitutional Limitations at 191 (8th ed. 1927):
If the legislature would prescribe a different rule for the future from that which the courts enforce, it must be done by statute, and cannot be done by a mandate to the courts, which leaves the law unchanged, but seeks to compel the courts to construe and apply it, not according to judicial, but according to the legislative judgment.
The late Justice Griffith, speaking for this Court, in Mitchell v. State, 179 Miss. 814, 824-825, 176 So. 743 at 745 (1937), held:
The common law, however, both in its substantive and in its adjective features, is not now, never has been and never will be, static or stagnant. It has been one of the proudest boasts of the common law that it has within itself the potency of steady improvement, and this by judicial action, so long as that action is in accord with existing fundamental legal principles. It is the duty of courts, as attested by numerous decisions in this court, and in all courts throughout the nation, not only to keep the common law and its processes of enforcement abreast, or nearly so, with the substantial innovations of time, with the higher moral and material attainments in the general progress of enlightened civilization, proceeding always, however, upon established fundamental legal principles, [citations omitted]; but also it is equally the duty of courts to see that the state of the law shall continually profit by the experiences and observations of the past and that, when such experiences have definitely disclosed a mischievous imperfection in previous precedents, the mischief shall be removed by recourse to another, and a fitter, legal principle. 7 R.C.L. p. 1008, § 35; 15 C.J. p. 957, note 19.
In Planters' Oil Mill v. Yazoo & M.V.R. Co., 153 Miss. 712 at 717, 121 So. 138 at 140 (1929), this Court held:
The Supreme Court has the authority to declare for itself what the common law of this state is. The common law is the perfection of reason, and, when a rule of the common law ceases to be reasonable and just, it is no longer the common law.
"This flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law... . It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." Funk v. United States, 290 U.S. 371 at 382-383, 54 S.Ct. 212 at 216, 78 L.Ed. 369 at 375 (1933).
This Court is not required by our Constitution to accept incongruous or undue burdens such as this statute imposes. Application of Schragger, 58 N.J. 274, 277 A.2d 212 (1971). "While no rule of thumb will cover all the cases, in general it may be said that no deviation from the constitutional provisions incorporating the doctrine of the separation of powers will be tolerated which impairs the essential integrity of one of the great branches of government." Massett Bldg. Co. v. Bennett, 4 N.J. 53 at 57, 71 A.2d 327 at 329 (1950).
We therefore hold, as we must, that the portion of the 1987 Act requiring the courts of this state in determining sovereign immunity to apply the case law as it existed five years previously on November 10, 1982, unconstitutional and void.
BANKS, Justice, for the Court:

D.
We find that Miss. Code Ann., Section 11-46-6 (Supp. 1991), is unconstitutional *1297 for the further reason that Article 4, Section 61 dictates that result.
Section 61 provides as follows:
No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.
We have held that this provision is not a mere rule of procedure "addressed to and ending with the members of the legislature" and that "[a]n act of the legislature disregarding this would be disregarded by the courts." Hunt v. Wright, 70 Miss. 298, 11 So. 608 (1892). We have been true to our word.
Moore v. Tunica County, 143 Miss. 821, 107 So. 659 (1926), involved the constitutionality of Chapter 160, Laws of 1922. By Chapter 102 of the Laws of 1916 and Chapter 122 of the Laws of 1920 the Legislature had enacted vast changes in the compensation of chancery and circuit clerks and fixed their salaries at certain amounts. Chapter 160, Laws of 1922 repealed these acts and reinstated the compensation as authorized by law on the first Monday in January 1916. Quoting from our opinion,
The legislature of 1922 enacted Chapter 160, which is entitled: An act to repeal chapter 102 of the Acts of 1916 and chapter 122 of the Acts of 1920 in so far as they fix the salaries of sheriffs and tax collectors, chancery and circuit clerks and their deputies, and to provide for such officers, such compensation as was fixed by the laws as they existed on the first Monday in January 1916, and to amend section 2196 of the Code of 1906, so as to change the fees and commissions of tax collectors for the collection of taxes. (emphasis added).
Section 1 of this act provides:
That all fees, commissions and salaries of the offices mentioned in the title of this act as they existed on the first Monday in January 1916, are hereby restored under the conditions imposed by succeeding sections of the act, and such officers shall be paid exclusively from the fees, commissions and salaries as they were provided by law for each of them to collect on the said first Monday in January 1916, including the chancery clerk the salary provided for county auditors by this act, or such fees, commissions and salaries as may hereafter be provided.
143 Miss. at 831, 107 So. at 660 (emphasis added).
We then held,
It is clear from the language of the title, and of section 1 of the act that it was the intention of the legislature to revive and restore the scheme of compensating these officers for their services and that was in effect prior to the enactment of chapter 102, Laws of 1916 and chapter 122, Laws of 1920, and amendments thereto. The act cannot be clearly understood or applied without a reference to section 2163, Code of 1906 (section 1844, Hemingway's Code), and the Code provisions for collecting these fees, and we think that it violates section 61 of the Constitution of 1890... .
In Lipe v. City of Miami, 141 So.2d 738 (Fla. 1962), the Supreme Court of Florida gave the reason for a Constitutional prohibition of this kind:
Judge Cooley, in People [ex rel. Drake] v. Mahaney, 13 Mich. 481, speaking of a similar provision, said:
The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another, in an act or section which was only referred to, but not republished, was well calculated to mislead the careless as to its effect and was perhaps sometimes drawn ... for that express purpose. Endless confusion was then introduced into the law and the Constitution wisely prohibits such legislation.
141 So.2d at 742. It has also been recognized that such constitutional provisions *1298 have the purpose of preventing "covert and incautious legislation." Application of Vaccaro, 1 N.J. Super. 591, 61 A.2d 905 (1948).
The clause in section 11-46-6 providing that causes of action arising from acts or omissions of the State or political subdivisions shall be governed "by the case law governing sovereign immunity as it existed immediately prior to the decision in the case of Pruett v. City of Rosedale ..." does not adopt a mere statute by reference but revives an entire body of common law on a particular subject by reference. It is readily apparent that the terms here employed are blind, that one must examine a plethora of cases to determine what the law is and that it cannot be said that the average legislator, lawyer and layman alike, had a reasonable chance of understanding all that was enacted.
For example, would an informed legislator vote to adhere to the governmental/proprietary dichotomy applied to municipalities by the case law or eliminate it? How would he or she vote to define those terms? Should that same dichotomy apply to political subdivisions or to the State itself? We decided in Pruett that these and other nuances of sovereign immunity are policy decisions best left to the Legislature. Those policy decisions can not be subjected to fair legislative scrutiny when a body of law is adopted by reference en masse. It is just this evil against which Section 61 of our Constitution guards.
The Legislature, as that branch of our government charged most directly with establishing policy, has every right to prescribe the parameters of the immunity of the sovereign. It must do so, however, in a manner which comports with the Constitution. This it has not done, and we are compelled to so declare.

PART II
It is appropriate that we take cognizance of the fact that the public relies on the law as written until it is declared invalid. Because of this, we must recognize that, in judicially declaring and then abolishing immunities, we legislate. Certainly, we do so well within time-honored common law parameters, but we legislate nevertheless. We have often declared our pronouncements ineffective with regard to certain past and, in some instances, future conduct in order to give the Legislature time to act or otherwise to avoid harsh results. Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982); Frazier v. State, by and through Pittman, 504 So.2d 675 (Miss. 1987); Alexander v. State, by and through Allain, 441 So.2d 1329 (Miss. 1983).
The notion that a statute once declared unconstitutional is void ab initio, therefore, has long since been abandoned by this and other courts. See, e.g., Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973); State ex rel. Cardinal Glennon Memorial Hospital for Children v. Gaertner, 583 S.W.2d 107 (Mo. 1979), holding limited on other grounds; Perkins v. Eskridge, 278 Md. 619, 366 A.2d 21 (1976), rev'd on other grounds; Shreve v. Western Coach Corporation, 112 Ariz. 215, 540 P.2d 687 (1975); Downs v. Jacobs, 272 A.2d 706 (Del. 1970).
For the past eight years, the State and its political subdivisions have relied upon a legislative response to our declaration in Pruett thought sufficient to immunize the public treasury. It is logical to assume that alternative provisions and contingency planning to protect that treasury have been foregone. To hold now that no immunity has existed since 1984 poses fiscally disastrous consequences to our State and its political subdivisions. We had hoped to avoid such consequences by setting a date certain for the cessation of our recognition of judicially created immunity. Pruett, 421 So.2d at 1052.
It is necessary that we do something similar now. This Court creates a "new rule" as today's ruling suddenly scraps the continuing, temporal extensions of immunity the State of Mississippi and its political subdivisions were granted under Miss. Code Ann. § 11-46-6. See Cain v. McKinnon, 552 So.2d 91, 92 (1989); see also American Trucking Assn. v. Smith, 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990); Chevron *1299 Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296, 306 (1971). An essential question before this Court, then, is whether this "new rule" will apply prospectively (stripping immunity from the date of this decision forward), retroactively (stripping immunity for this action as well as for actions caused prior to the date of this decision), or assume a selectively prospective application (stripping immunity from the date of this decision forward and stripping immunity from the Mississippi State Highway Commission in this case). James B. Beam Distilling Co. v. Georgia, 501 U.S. ___, ___, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481, 488-90 (1991). We conclude that the first option  pure prospective application of the new rule  is the correct course.
Without doubt, the State and its political subdivisions have relied on their immunity under Miss. Code Ann. § 11-46-1 et seq. and conducted non-proprietary activities with knowledge of this immunity. This immunity was granted to the State and its subdivisions by the Legislature in response to Pruett. It therefore seems the only appropriate resolution of this case, in light of a new rule and its effect on old (and unsuspecting) parties, would be to apply this decision prospectively. In Cain, 552 So.2d at 92, we observed that where a new rule of law is created, where the defendant was not aware of the new rule at the time the cause of action arose and where the new rule was not "clearly foreshadowed," it would be unfair to apply the new rule retroactively. It is true that we observed that where a defendant commits a tort already proscribed by criminal and civil law the tortfeasor deserves no protection by prospective application of the rule. Id. at 92-93.
While the tortious conduct here alleged is clearly proscribed as a matter of civil law, nothing in our previous decisions foreshadows our present view of the propriety of the legislation in question. Indeed, we specifically left the subject matter to the Legislature in Pruett and we have never before intimated that its response failed to pass constitutional muster. See e.g., Webb v. Jackson, 583 So.2d 946 (Miss. 1991) (But see McRae, J. dissenting.); Starnes v. City of Vardaman, 580 So.2d 733 (Miss. 1991); McKay By and Through McKay v. Boyd Const. Co., Inc. 571 So.2d 916 (Miss. 1990); Webb v. County of Lincoln, 536 So.2d 1356 (Miss. 1988).
Moreover, we do not here deal with tortfeasors in the ordinary sense. That is, we do not deal with human beings guilty of careless or intentional wrong. There is no immunity accorded the active wrongdoer by the act in question. What we treat here is the question whether the taxpayers stand exposed to liability for such wrongs.
The United States Supreme Court has been faced with the question of retroactivity of a new rule. In Chevron Oil, 404 U.S. at 105-08, 92 S.Ct. at 354-56, 30 L.Ed.2d at 304-07, the United States Supreme Court held a laborer injured on an oil rig may continue to maintain an action against the owner of the rig, even though case law since the initiation of the action would currently prohibit filing the action. A blind, retroactive application of this "new rule" would cause an unjust result as the laborer would be barred from recovery based on intervening precedent that was entirely unforeseeable. Id. at 107, 92 S.Ct. at 356, 30 L.Ed.2d at 306. The Chevron Court developed a three-factor, prospectivity test for determining the rights of a party to remain undamaged by a new rule:
First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp., supra, 392 U.S. [481] at 496, 88 S.Ct. [2224] at 2233 [20 L.Ed.2d 1231 (1968)], or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see e.g., Allen v. State Board of Elections, supra, 393 U.S. [544] at 572, 89 S.Ct. [817] at 835 [22 L.Ed.2d 1 (1969)]. Second, it has been stressed that `we must... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further retard its operation.' *1300 Linkletter v. Walker, supra, 381 U.S. [618] at 629, 85 S.Ct. [1731] at 1738 [14 L.Ed.2d 601 (1965)]. Finally, we have weighed the inequity imposed by retroactive application, for `[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by a holding of nonretroactivity.' Cipriano v. City of Houma, supra, 395 U.S. [701] at 706, 89 S.Ct. [1897] at 1900 [23 L.Ed.2d 647 (1969)]. Chevron Oil, 404 U.S. at 106-07, 92 S.Ct. at 355, 30 L.Ed.2d at 306.
Taking the Chevron factors one at a time, stripping sovereign immunity establishes a new rule as the State and its subdivisions are no longer immune from actions the moment this mandate issues. In addition, as the State and its subdivisions have been given an annual, legislative reprieve from Pruett for the past eight years, it stands to reason that our decision today has not been "clearly foreshadowed." Regarding the second factor of Chevron Oil, it would be hard to imagine a situation where a holding from this Court would disserve the purpose of the "old rule" more than the floodgates of liability and litigation costs this "new rule" would open, if applied retroactively.
Precisely because of this, the third factor is also satisfied: the inequity of sanctioning actions against a reasonably unsuspecting State and its subdivisions through anything but a prospective application of our decision today is as obvious today as when we made the Pruett rule prospective eight years ago.
To be clear, the rulings of the United States Supreme Court are not binding on us in this regard. Reference is made to the Chevron test as an orderly way to consider the issue. We did much the same, without so detailed an analysis in Pruett and Meeks v. Tallahatchie County Election Commission, 513 So.2d 563 (Miss. 1987), to name but two instances.
Assuming that the proper application of today's ruling is prospective, the question arises whether it should be "selectively prospective" that is, applying to the parties now before the court only, or purely prospective, applying only to claims arising after the mandate issues. The doctrine of selective prospectivity in a civil matter has never been explicitly adopted by this Court, even though there are instances in which we have done so in fact. See e.g. Pruett; Meeks v. Tallahatchie County Election Commission, 513 So.2d 563 (Miss. 1987). The United States Supreme Court has recognized the basic fault with selective prospectivity, as follows:
But selective prospectivity also breaches the principle that litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally See R. Wasserstrom, The Judicial Decision 69-72 (1961). "We depart from this basic judicial tradition when we simply pick and choose from among similarly situated defendants those who alone will receive the benefit of a `new' rule of constitutional law." Desist v. United States, [394] U.S. 244, 258-259, 22 L.Ed.2d 248, 89 S.Ct. 1030 [1039] (1969) (Harlan, J., dissenting); see also, Von Moschzisker, Stare Decisis in Courts of Last Resort, 37 Harv.L.Rev. 409, 425 (1924). For this reason, we abandoned the possibility of selective prospectivity in the criminal context in Griffith v. Kentucky, 479 U.S. 314, 328, 93 L.Ed.2d 649, 107 S.Ct. 708 [716] (1987), even where the new rule constituted a "clear break" with previous law, in favor of completely retroactive application of all decisions to cases pending on direct review. Though Griffith was held not to dispose of the matter of civil retroactivity, see id., at 322, n. 8, 93 L.Ed.2d 649, 107 S.Ct. 708 [at 712, n. 8], selective prospectivity appears never to have been endorsed in the civil context. [American Trucking Associations, Inc. v.] Smith, 496 U.S. [167], at 197, 110 L.Ed.2d 148, 110 S.Ct. 2323 [, at 2341] (plurality opinion).
Beam, 501 U.S. at ___, 111 S.Ct. at 2444-45, 115 L.Ed.2d at 489-490.
There is no valid reason for applying the new rule to the parties before the Court *1301 and the old rule to others similarly situated. There are other challenges to sovereign immunity pending in this Court and many others yet pending in our trial courts or to be filed. We find no justification for allowing the parties here to escape the immunity bar and not the others. Compare, Meeks, 513 So.2d at 568. Additionally, application of selective prospectivity in this case would place the Mississippi State Highway Commission in the exact same predicament pure prospectivity eliminates  a defendant falling victim to a new rule after justifiably relying on an old rule. See Desist v. United States, 394 U.S. 244, 258-59, 89 S.Ct. 1030, 1039, 22 L.Ed.2d 248, 261 (1969) (Harlan, J., dissenting); Mosser v. Darrow, 341 U.S. 267, 276, 71 S.Ct. 680, 684, 95 L.Ed. 927, 934 (1951) (Black, J., dissenting). We should not have applied the Pruett rule to Pruett. We decline to apply the rule we announce today to the Presleys.[7]
To the extent that Miss. Code Ann. § 11-46-6 purports to freeze the doctrine of sovereign immunity to the state of development of the common law prior to Pruett, it is void. We deem it only a sufficient pronouncement of the public policy of this State to immunize the State from claims arising thereafter to the extent that this Court would do so applying the evolving standards of common law, including any extensions or contractions of the doctrine deemed appropriate, on a case by case basis and to the extent that those benefitting by the immunity did not prepare themselves by acquiring insurance policies covering the liability in question in the event that immunity did not obtain. See, McCall by Andrews v. Batson, 285 S.C. 243, 329 S.E.2d 741 (1985). So that all will be aware, we absolutely decline to further extend the doctrine, other than in the areas preserved in Pruett, beyond the date of this case.
This matter is therefore reversed and remanded to the circuit court for further proceedings.
Reversed and remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
AS TO PART I A-B: HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
AS TO PART I C: HAWKINS, P.J., and SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
AS TO PART I D: HAWKINS and DAN M. LEE, P.JJ., and BANKS, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
AS TO PART II: DAN M. LEE, P.J., and ROBERTSON, BANKS and PITTMAN, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by HAWKINS, P.J., and SULLIVAN, J.
ROY NOBLE LEE, C.J., dissents with separate written opinion, joined by PRATHER, J.
McRAE, J., dissents as to parts I-D and II, with separate written opinion.
McRAE, Justice, concurring in part, dissenting in part:

I.
I concur with Justice Hawkins' majority opinion which pronounces that Miss. Code Ann. § 11-46-6 (Supp. 1987) of the Sovereign Immunity Act and its predecessors, which mandate that all claims made against the State and its political subdivisions be governed by case law which existed prior to our decision in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), is unconstitutional. I do not join Justice Banks' *1302 section of the majority opinion making the application of this holding prospective as it would be repugnant to our constitution and the mandates of the United States Supreme Court, nor do I find Section 61 applicable because it deals with statutes either repealed or amended by the legislators and has nothing to do with the common law which we decide.
Having declared that § 11-46-6, similar to Senate Bill 2441 passed by the Legislature in 1984, is void and Pruett is law today, those cases which we overruled in Pruett stand overruled today, as they have been since July 1, 1984 when Pruett became law. See Appendix "A".
The Sovereign Immunity Act, as passed by the Legislature in 1987, is essentially the same as that adopted in 1984. Thus, if the 1987 statute is unconstitutional, so is the statute passed in 1984 as well as those approved in intervening years. Sovereign immunity is a court-created doctrine, first recognized by this Court in Anderson v. State, 23 Miss. (14 S & M) 459 (1852). In Pruett, as previously noted, we firmly and emphatically abolished that immunity long enjoyed by the State and its political subdivisions under common law. As we stated in Pruett,
The immunity we abolish in this opinion is the immunity of the "sovereign", which broadly speaking is the state, the county, the municipality or any other local subdivision of the sovereign... . This Court hereby abolishes the doctrine of immunity of the "sovereign." That term includes the state and its local subdivisions. All previous opinions of this Court upholding immunity of the sovereign are hereby abolished.
421 So.2d at 1052.
Those learned men who drafted our constitution in 1890, however, effectively eviscerated the doctrine by refusing to distinguish between public and private wrongs. Miss. Const. art. 3, § 24, states:
All courts shall be open; and every person for an injury done to him in his lands, goods, person or reputation, shall have a remedy by due course of the law, and right and justice shall be administered, without sale, denial, or delay. (emphasis added)
These are fundamental rights given to our citizenry and this language clearly makes no distinction between a government wrong and a private wrong. Our constitution simply does not discriminate. Accordingly, Anderson and its progeny were overruled by the adoption of the constitution in 1890.
This Court takes seriously its duty to respond to those claims which come before it in a manner consistent with those principles which are imbedded in our constitution, statutes and jurisprudence. By our oaths, we are both the keeper and the conscience of the constitution, and must, therefore, be ever-vigilant to make sure that it is enforced. In this role, we are sometimes required to re-evaluate even those policies and precedents which have been seemingly permanently etched in stone by both legislative and judicial action.
Yet over the years, this Court has merely winked at the constitution and allowed common law to reign supreme. Finally, in Pruett, we abrogated sovereign immunity and overruled those decisions which had become woven into our jurisprudence, attached hereto as Appendix "A". Those cases today stand overruled and have been since July 1, 1984, when Pruett became law. As the majority notes, the legislature has overstepped the boundaries of the constitution in directing us to adhere to that law which existed prior our decision in Pruett, thus freezing in time the very cases we expressly overruled.
We made our decision in Pruett prospective to give the legislature two sessions in which to make adjustments and prepare political subdivisions for the liabilities they would face. In failing to follow properly our directive in Pruett, we find that the legislature further has failed to secure due process for those who have been wrongfully injured by our governmental entities and their employees. We have, in essence, a two-tiered system of justice. One affords a plethora of remedies for persons injured by private individuals or entities. The other provides limited, if any, relief for those *1303 who have the misfortune of suffering an injury proximately caused by the negligence of a member of the public sector. Moreover, the opportunity for redress varies from one public entity to another. Thus, while our courts may be open to one person, they remain closed to another. Justice, it appears, depends upon the status of the tortfeasor. If this Court is to enforce the constitution equally among all people, due process must be secured for all of our citizenry.
The law must operate alike upon all and not offer class privileges, even to governmental entities. Every citizen of this State, as well as those persons visiting this State, has a right to seek redress when the negligence of our government interferes with the enjoyment of their lives, liberty or property. The badge of governmental authority cannot and should not serve to clothe the public sector in a shroud of indifference or to shield it from liability. As we stated in Dr. Pepper Bottling Co. of Miss. v. Bruner, 245 Miss. 276, 148 So.2d 199 (1962):
The law imposes upon every person who undertakes the performance of an act  which, it is apparent, if not done carefully, will be dangerous to another person, or the property of other persons  the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or property which is directly attributable to a breach of such duty.
We find nothing in our constitution which absolves the public sector from this duty of care or which closes the doors of our courts to those who have been injured when that duty is breached.
The undergirding premise of sovereign immunity, that the King (government) can do no wrong, as an overwhelming number of jurisdictions have recognized, is long outdated. By relieving governmental entities of any liability for the wrongs that may be committed by their employees, we engender a "devil may care" philosophy quite contrary to our democratic notions of responsible government. A society which takes care of its own is a healthy society. Indeed, our laws and our tax dollars provide support and protection for many who are entitled to receive it  as well as for those who are not. Why then should a line be drawn in the sand when it comes to providing compensation for those who have been injured by tortious acts of governmental entities and their employees? When governments know that they are liable and must assume the costs of their negligence, this State will be a safer place to live, work and enjoy life.
Having found § 11-46-6 of the Sovereign Immunity Act unconstitutional as passed in 1987, we necessarily must find that the 1984 Act is likewise void so that justice will be equally applied to all under our constitution. Thus we reaffirm our position in Pruett that, as of July 1, 1984, sovereign immunity is abrogated and all those previous cases upholding sovereign immunity as of that date and subsequent to our decision today are overruled.

II.
There is an old saying, "My word is my bond," which used to apply to lawyers and judges. Apparently, it does not apply to this Court anymore. In 1982, addressing the public and the political subdivisions of this state, we promised  no, made it law  that as of July 1, 1984, the doctrine of judicial sovereign immunity would be forever laid to rest. Today the Court recants, ignores what it said before, and proclaims with a straight face that judicial sovereign immunity has continued all along, alive and well. The public often regards members of our profession as untrustworthy and unwilling to keep their word. Given today's decision, it is easy to see why.
While I join Justice Hawkins' majority in Parts I(A), (B) and (C), I emphatically disagree with Part II written by Justice Banks, which makes the application of today's decision prospective. Believing that we cannot give even temporary force to a statute which we have found to be unconstitutional and void, I write to express the opinion that our decision should be retroactive to July 1, 1984, when Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), became *1304 law. We are dealing with fundamental rights guaranteed by our constitution, which does not allow the legislature to enact laws to the contrary. Our pronouncements on basic constitutional rights have always been retroactive. Today, the majority falls into the trap of trampling on the basic constitutional rights of Presley and the citizenry of this state.
The majority has declared unconstitutional and void "that portion of the 1987 Act requiring the courts of this state in determining sovereign immunity to apply the case law as it existed" prior to Pruett. I fully concur in that declaration. It is important to observe, however, what the majority has not declared unconstitutional. First, the majority leaves intact the bulk of the Act. This is not to say, of course that those portions of the Act not addressed by today's decision are valid and constitutional. Today's contest focuses exclusively on § 11-46-6 (1987) along with its predecessor and successor provisions. The validity of other sections in the Sovereign Immunity Act are not at issue. Secondly, the Court declares unconstitutional only part of § 11-46-6. Section 11-46-6 (1987) states:
This chapter shall apply only to claims or causes of action arising from acts or omissions occurring on or after July 1, 1988, as to the state, and on or after October 1, 1988, as to political subdivisions. Claims or causes of action arising from acts or omissions occurring prior to July 1, 1988, as to the state, or prior to October 1, 1988, as to political subdivisions, shall not be affected by this chapter but shall continued to bed governed by the case law governing sovereign immunity as it existed immediately prior to the decision in the Pruett v. City of Rosedale, 421 So.2d 1046, and by the statutory law governing sovereign immunity in effect from and after the passage of Chapter 474, Laws of 1985.
The majority has voided only "that portion of the 1987 Act" which reinstates pre-Pruett law; i.e., the second sentence of § 11-46-6. The first sentence, which permits the Act to become operative in 1988, remains intact: "This chapter shall apply only to claims or causes of action arising from acts or omissions occurring on or after July 1, 1988, as to the state, and on or after October 1, 1988, as to political subdivision."
The majority's implicit acceptance of the first sentence in § 11-46-6 cannot be logically reconciled with the majority's holding that today's decision should apply prospectively only. If the first sentence in § 11-46-6 is valid, then its immediate predecessor, the first sentence in Miss. Laws ch. 438 § 6 (1986), must also be valid. Miss. Laws ch. 438 § 6 (1986) begins:
This Act ... shall apply only to causes of action that accrue on or after July 1, 1987, as to the state, and on or after October 1, 1987, as to political subdivisions.
Presley's claim arose on October 2, 1987, one day after the 1986 Act became effective. Since the Court has declared void the second sentence of § 11-46-6 (1987) which purports to shield the defendants from liability for claims arising after October 1, 1987, there is absolutely no reason why Presley should not have a viable claim by virtue of the 1986 Sovereign Immunity Act.
This line of reasoning applies not only to Presley, but to all other potential plaintiffs whose claims arise after July 1 or October 1 of 1985. The Sovereign Immunity Act has been reenacted every year since 1984. Each enactment has included a provision postponing the effective date of the Act until July 1 of the following year for actions against the state and until October 1 of the following year for actions against political subdivisions. Each reenactment has also included a temporary shield purporting to impose pre-Pruett law during the interim. The effect of today's decision is to remove the successive shields while allowing each year's Sovereign Immunity Act to go into effect on the specified effective date. The 1984 Act, for instance, opens the door for claims against the state accruing on or after July 1, 1985, and for claims against political subdivisions which accrue on or after October 1, 1985. The 1985 Act, in turn, opens the door for actions accruing on or after July 1 and October 1, 1986. This progression continues *1305 right on up through the 1992 Act which opens the door for actions accruing on or after July 1 or October 1, 1993. To say that governmental immunity absolutely bars all actions against the sovereign which arise or accrue before today's decision totally ignores clear and undisputed language of the Act which, absent the clause refering to pre-Pruett law, specifically provides for such actions.
Even if the statute did not expressly permit parties to sue the state for injuries accruing after the effective date of each reenactment, I would still hold that today's decision should apply retroactively. In Pruett, we properly abrogated court-created sovereign immunity and overruled those cases which had kept the doctrine alive. However, in making its application prospective and contingent upon legislative initiative, we attempted to get out of the quagmire as expediently as possible. In stating that our holding in Pruett would be effective two years later in 1984, we gave the legislature two years to implement a plan that would offer governmental entities an opportunity to prepare for their new responsibility to further protect the people of this state. We have now found that § 11-46-6 of the Sovereign Immunity Act, as passed by the legislature in 1987, does not pass constitutional muster. The Act is essentially the same as that enacted in 1984. What, then, is the status of those laws passed between 1984 and 1987? Two wrongs do not make a right. Rather, like a house of cards, the legislature's annual reenactment of constitutionally defective statutes must also fall. To make prospective a statute which we have declared void makes no sense. Therefore, Pruett is good law today and has been since July 1, 1984, when we held that the abrogation of sovereign immunity would take effect. It is the law we must follow when governmental entities are brought to task for their negligent acts.
The majority's decision to make today's holding prospective without overruling Pruett leads us blithely from dry land into quicksand. We should limit our attempts to prospectively apply our ever-evolving common law. To make our pronouncement in the case sub judice prospective would only tender a further disservice to our citizenry and to our constitution. As we stated in State ex rel. Moore v. Molpus, 578 So.2d 624, 637 (Miss. 1991):
Our people have a need to have their law settled so that they might rely upon it. Where litigants challenge a prior ruling, upon which persons may justifiably have placed their faith, we must consider that a weighty factor.
We should not create just another oasis as we did with Pruett, providing a once-in-a-decade window of opportunity for Pruett without insuring that the door is open for the Presleys, as well as those whose causes of action arose prior to this decision and are still viable. Other cases challenging sovereign immunity have been filed and are still pending in this Court. By making our decision today prospective, we are, in essence denying the right of those litigants to due process without even looking at their cases. Pruett had his day in court. The Presley family, likewise has won its constitutional battle. Sadly, however, they have lost the war because an arbitrary prospective application of our decision leaves them without redress in violation of the constitution.
By arbitrarily applying today's decision prospectively, the majority ignores the universal rule that judicial decisions generally apply retroactively. See James B. Beam Distilling Co. v. Georgia, 501 U.S. ___, ___, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481, 488 (1991) (practice of full retroactivity "is overwhelmingly the norm"). In Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), (hereinafter Hilbun), we stated:
It is a general rule that judicially enunciated rules of law are applied retroactively. Legislation applies prospectively only, and we are not thought to be in the business of legislating. Rather, our function is to decide cases justly in accordance with sound legal principles which of necessity must be formulated, articulated and applied consistent with the facts of the case.

Keyes v. Guy Bailey Homes, Inc., 439 So.2d 670 (Miss. 1983), abolishing the requirement *1306 of privity of contract in home construction contracts applied retroactively; Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983), providing that punitive damages may be recovered in chancery court was applied retroactively; McDaniel v. State, 356 So.2d 1151 (Miss. 1978) overruling cases which allowed voluntary intoxication as a defense to a crime applied retroactively.
The general rule applied universally in this country in federal and state courts is simply put in Jones v. Thigpen, 741 F.2d 805 (5th Cir.1984) [vacated on other grounds 475 U.S. 1003, 106 S.Ct. 1172, 89 L.Ed.2d 292 (1986)].
"Judicial decisions ordinarily apply retroactively. See Robinson v. Neil, 409 U.S. 505, 507-08, 93 S.Ct. 876, 877-78, 35 L.Ed.2d 29 (1973). `Indeed, a legal system based on precedent has a built-in presumption of retroactivity.' Solem v. Stumes, 465 U.S. 638, 641-42, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984)."
741 F.2d at 810.
Even Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), was held to apply retroactively to that case.

Hilbun, 466 So.2d at 876 (emphasis added in part).
The majority tries to justify a prospective-only application of today's ruling under the three-prong test for prospectivity articulated in Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In doing so, however, the majority fails to appreciate the significance of Pruett. As the Court acknowledged in Hilbun, Pruett "was held to apply retroactively to that case." Since the rule announced in Pruett has already been given retroactive effect, Chevron Oil is irrelevant to and should have no bearing on the case at hand.
In James B. Beam Distilling Co., (supra) (hereinafter "Beam"), the United States Supreme Court held that the Chevron Oil analysis does not apply in cases where litigants seek to apply rules of law which have been both announced and applied to litigants in prior cases. Beam involved a Georgia statute which imposed a higher excise tax on imported liquor than that imposed on in-state liquor. In 1984, the United States Supreme Court in Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), found that a similar statute in Hawaii violated the Commerce Clause. The Court in Bacchus applied its ruling retroactively to the parties then before it. Relying on Bacchus, a Kentucky bourbon manufacturer initiated the Beam suit. The plaintiff asked a Georgia court to declare the Georgia excise tax statute unconstitutional and sought a refund of excise taxes paid in the years 1982, 1983, and 1984. The Georgia court found the statute unconstitutional but denied the plaintiff's claim for monetary relief on grounds that the decision should apply prospectively only under Chevron Oil. On appeal, the United States Supreme Court found that the Georgia court's reliance on Chevron Oil was misplaced. In a plurality opinion joined by Justice Stevens, Justice Souter wrote:
[T]he question is whether it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule [i.e., Bacchus] has already done so. We hold that it is, principles of equality and stare decisis here prevailing over any claim based on a Chevron Oil analysis.

Beam, 501 U.S. at ___, 111 S.Ct. at 2446, 115 L.Ed.2d at 491 (emphasis added). In a separate opinion, Justice White concurred with Justice Souter's reasoning. Justices Scalia, Blackmun, and Marshall also agreed with Justice Souter's reasoning in two additional concurring opinions but went on to opine that all prospective rulings are advisory opinions and thus exceed the Court's power to decide only "cases and controversies." A total of six justices, therefore, found Chevron Oil inapplicable and agreed that "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek the prospective application." Beam, 501 U.S. at ___, 111 S.Ct. at 2447-48, 115 L.Ed.2d at 493. In reaching this conclusion, the Court noted that it had totally abandoned the "possibility of selective prospectivity in the criminal context" in Griffith v. Kentucky, *1307 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The Court in Griffith had adopted the formerly minority view of Justice Harlan who had criticized the practice of "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases to flow by unaffected by that new rule." Mackey v. United States, 401 U.S. 667, 679, 91 S.Ct. 1160, 1173, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part). Beam merely expanded this principle to civil cases. As Justice Souter stated:
Griffith cannot be confined to the criminal law. Its equality principle, that similarly situated litigants should be treated the same, carries comparable force in the civil context.
Beam, 501 U.S. at ___, 111 S.Ct. at 2446, 115 L.Ed.2d at 491. The majority in the instant case suggests that the Court in Pruett erred in applying its ruling retroactively to the Pruett plaintiff. Regardless of what it wishes, however, the majority cannot change the fact that the plaintiff in Pruett was permitted to benefit from the ruling in that case. Pruett was a fish snatched from "the stream of appellate review," and it is now much too late to throw it back. Consequently, the majority's use of the Chevron Oil test directly conflicts with the United States Supreme Court's holding in Beam.
In Sterling v. Block, 953 F.2d 198 (5th Cir.1992), the Fifth Circuit considered the question of retroactivity in light of Beam and held that "it is error ... to apply the Chevron Oil analysis to decide that a new rule should be applied prospectively if the rule was applied retroactively to the parties in the case in which it was originally announced." Sterling, 953 F.2d at 200, citing 501 U.S. at ___, 111 S.Ct. at 2446. (emphasis added). In that case, Block had obtained jurisdiction over Sterling by attaching his interest in a mineral lease. Subsequently, Block obtained a judgment against Sterling and had the property seized and sold in January, 1989 to satisfy the judgment. Between the time of the judgment and the sale, Block mortgaged his property to MBank, the predecessor in interest to Bank One, the intervenor-appellee in the interlocutory appeal. Although Block was aware of Bank One's interest in the property, she did not inform Bank One of the seizure or the sale. In Davis Oil Co. v. Mills, 873 F.2d 774 (5th Cir.1989), cert. denied, 493 U.S. 937, 110 S.Ct. 331, 107 L.Ed.2d 321 (1989), the Fifth Circuit found that Louisiana's request-notice statute was constitutionally deficient in its constructive notice provisions for foreclosures. Thus, Bank One contended that its due process rights had been violated by Block's failure to provide notice. While the Fifth Circuit did not discuss the retroactivity of its decision in Davis Oil, it determined in Sterling that Davis Oil court did apply the new rule to the parties before it, and accordingly, that it applied also to the parties in Sterling. Relying on Beam, the Fifth Circuit stated:

[B]efore application of the Chevron Oil analysis would be appropriate, we must answer the threshold question whether we applied the rule enunciated in Davis Oil to the parties in that case. If so, Beam dictates that the rule be applied retroactively to this case as well. In order to conclude that the rule was applied to the original parties, the earlier opinion need not explicitly address the retroactivity issue. Where the court does not explicitly decide the retroactivity question or reserve the question of whether its holding applies to the parties before it, "it is properly understood to have followed the normal rule of retroactive application in civil cases." 501 U.S. at ___, 111 S.Ct. at 2445.
Sterling at 200 (emphasis added).
Although our decision in Pruett was made prospectively, the rule enunciated therein was applied to the parties in that case. Pruett was allowed to have his day in court. Accordingly, under Beam and Sterling, the Presley family should be entitled to seek redress. We, of course, are not bound by the federal court decisions in Beam and Sterling. The principles of law set out in those cases are sound, however, and worthy of adoption in the instant case.
*1308 Apparently rejecting or ignoring Beam and Sterling, the majority employs the Chevron Oil test. I am therefore compelled to address its dubious application to the situation before us. Looking at the first prong of Chevron Oil, we have not, by abrogating sovereign immunity, unfairly created a startling new rule of law. Rather, our decision was "clearly foreshadowed" first by our decision in Pruett, which expressly overruled prior law, and further by the legislature's initial passage of the Sovereign Immunity Act and its subsequent re-enactment without implementation of the statutes we now find void. Chevron Oil, 404 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d at 306. See also Cain v. McKinnon, 552 So.2d 91, 92 (Miss. 1989).
In Pruett, we clearly explained to both the legislature and the state, as well as its political subdivisions that:
We next need to consider the manner and the period of time in which the mandate of this opinion shall be carried out. We realize that if it is done immediately, the state and the local subdivisions would not have sufficient time to make preparations therefor. There are many conditions that the legislature may consider. As we already have discussed, we have state agencies which have been ordered and directed by the legislature to carry liability insurance, while others have been refused permission to do so. These are legislative problems that will take time to solve. Other states have recognized this and have abolished the immunity of the sovereign prospectively. (Citations omitted) We, therefore, are of the opinion that other than in the particular case before us, the mandate of this opinion abolishing sovereign immunity as that term is hereinabove described should not be effective until on and after July 1, 1984. In addition to the time necessary for some entities to adjust, we recognize that two sessions of the legislature will have passed.
421 So.2d at 1052.
In Hilbun, supra, this Court changed the standard of care in medical negligence cases from the "locality rule" to the "national rule." Noting that the change was "clearly foreshadowed" by dicta in prior cases, the Court applied the change retroactively. See Hilbun, 466 So.2d at 875-77. Ironically, the providers of medical care affected by Hilbun received less advance warning of the impending abolition of the "locality rule" than this state's political subdivisions received concerning the end of governmental immunity: Hilbun was heralded by "dicta;" today's ruling was a fait accompli by virtue of Pruett. To apply Hilbun retroactively while adopting a prospective-only stance in today's ruling is patently illogical.
Likewise, considering the second prong of the Chevron Oil test, the prior history of the law shows that it has been in a state of suspended animation for nearly a decade since our pronouncement in Pruett. Each change in the effective date of the statute has sent some conscientious governmental entities and political subdivisions scrambling to obtain liability insurance before the effective date, while others have sat idly by, hoping for still another reprieve. Meanwhile, with the exception of Pruett, countless citizens injured by the negligent acts of the public sector have been unable to recover their losses based on the mandate of an unconstitutional statute. The state and its local subdivisions have had more than fair notice concerning the demise of governmental immunity. If they have failed to heed the notice, then it is time the chickens came home to roost. In Solem v. Stumes, 465 U.S. 638, 645, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984), the United States Supreme Court observed that "unjustified reliance" on a doomed rule of law is "no bar to retroactivity."
Finally, I believe that the majority is wrong in characterizing the State and its subdivisions as "unsuspecting" and further in finding that the injustice of "sanctioning" the public sector outweighs the merits of hearing the heretofore barred claims of injured plaintiffs. We have in effect statutes which, for certain entities, waive liability to the extent that liability insurance has been obtained. Other entities, such as the District, absent statutory directive, have purchased liability insurance pursuant to *1309 their general powers. Premiums on those policies are paid by tax dollars. When those premiums are paid and our citizens are still precluded from recovering against those policies by sovereign immunity, tax dollars are wasted and only the coffers of the insurer benefit. Moreover, unless the families of the injured parties are extremely wealthy, they may be devastated by ongoing medical bills or the loss or disability of a primary wage-earner. Thus, the costs of the injuries sustained are ultimately borne by the taxpayers of this state even though the responsible political subdivision is, itself, immune from liability.
Even if the Chevron Oil test were applicable, I believe that the case before us would clearly survive the Chevron Oil test, as it should to be applied retroactively to July 1, 1984, when Pruett became law. Beam, 501 U.S. ___, ___-___, 111 S.Ct. 2439, 2451-53, 115 L.Ed.2d 481, 497-500 (1991) (O'Connor, J., Dissenting). Our decision was clearly foreshadowed by the legislative and judicial actions of the past ten years; retroactive application would further rather than retard its operation; and no undue hardship or injustice would be wrought by so ruling. Because we allowed Pruett to benefit from our decision in Pruett, equity demands that the Presley family and others similarly situated likewise be allowed their day in Court. See Beam, 501 U.S. at ___, 111 S.Ct. at 2446, 115 L.Ed.2d at 491.
I would go even further and adopt the position espoused by Justices Scalia, Blackmun, and Marshall in Beam. Working from the premise that prospectively-applied judicial decisions are advisory in nature, Justice Blackmun wrote:
[T]his Court's function in articulating new rules of decision must comport with its duty to decide only "cases" and "controversies," See US Const, Art III, § 2, cl. 1. Unlike a legislature, we do not promulgate new rules to "be applied prospectively only" ... . The nature of judicial review constrains us to consider the case that is actually before us, and, if it requires us to announce a new rule, to do so in the context of the case and apply it to the parties who brought us the case to decide. To do otherwise is to warp the role that we, as judges, play in a government of limited powers... . We fulfill our judicial responsibility by requiring retroactive application of each new rule we announce.
Beam, 501 U.S. at ___, 111 S.Ct. at 2450, 115 L.Ed.2d at 496 (Blackmun, J. concurring). Justice Scalia further explained:
"The judicial Power of the United States" conferred upon this Court and such inferior courts as Congress may establish, Art III, § 1, must be deemed to be the judicial power as understood by our common-law tradition. That is the power "to say what the law is," Marbury v. Madison [5 U.S.] 1 Cranch 137, 177, 2 LEd 60 (1803), not the power to change it. I am not so naive (nor do I think our forebears were) as to be unaware that judges in a real sense "make" law. But they make it as judges make it, which is to say as though they were "finding" it  discerning what the law is, rather than decreeing what it is today changed to, or what it will tomorrow be... . For this reason ... I would find both "selective prospective" and "pure prospectivity" beyond our power.
Beam, 501 U.S. at ___, 111 S.Ct. at 2450-51, 115 L.Ed.2d at 497 (Scalia, J. concurring) (emphasis in original).
While the Mississippi Constitution does not have a "cases and controversies" clause, we have often found an implicit prohibition of advisory opinions in art. I, § 1. See Ladner v. Deposit Guaranty National Bank, 290 So.2d 263, 266-67 (Miss. 1973); Game & Fist Comm'n v. Marlar, 206 So.2d 628 (Miss. 1968); Insured Savings & Loan Ass'n v. State, 242 Miss. 547, 135 So.2d 703 (1961); Gipson v. State, 203 Miss. 434, 35 So.2d 327, 36 So.2d 154 (1948). An "advisory" opinion is one in which the litigant does not have a present interest in the subject matter of the controversy. See Insured Savings & Loan Ass'n, 242 Miss. 547, 555, 135 So.2d 703, 706. In today's decision, Presley wins in principle but is denied the benefit of the Court's ruling. How can a party have an "interest" in an issue if he is no better off *1310 regardless of what the Court decides? For this reason, I would hold that prospectively-applied decisions are inherently unconstitutional.
This Court is now on record as saying that only one citizen in ten years can exercise his right to seek redress for the State's wrongs against him, despite the language of article 24 of our constitution. The King is alive and well. We have ruled acts of the legislature to be unconstitutional and then turned our backs on the citizenry, exacerbating the wrongs of the legislature by making the unconstitutional act prospective. Believing this to be discrimination of the highest order, I dissent.
HAWKINS, P.J., and SULLIVAN, J., join this opinion.

APPENDIX A
McKlemurry v. University Medical Center, 380 So.2d 251 (Miss. 1980); Jones v. Knight, 373 So.2d 254 (Miss. 1979); Jagnandan v. Mississippi State University, 373 So.2d 252 (Miss. 1979), cert. denied 444 U.S. 1026, 100 S.Ct. 690, 62 L.Ed.2d 660 reh'g denied, 448 U.S. 914, 101 S.Ct. 34, 65 L.Ed.2d 1177 (1980); Rolph v. Board of Trustees of Forrest County General Hospital, 346 So.2d 377 (Miss. 1977); and Berry v. Hinds County, 344 So.2d 146 (Miss. 1977), cert. denied, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977); Horne v. State Building Commission, 233 Miss. 810, 103 So.2d 373 (1958); State v. Sanders, 203 Miss. 475, 35 So.2d 529 (1948); Smith v. Doehler Metal Furniture, 195 Miss. 538, 15 So.2d 421 (1943); State v. Woodruff, 170 Miss. 744, 150 So. 760 (1933); Ayres v. Bd. of Trustees of Leake County Agricultural High School, 134 Miss. 363, 98 So. 847 (1924); Mississippi Livestock Sanitary Bd. v. Williams, 133 Miss. 98, 97 So. 523 (1923); Mississippi Centennial Exposition Co. v. Luderbach, 123 Miss. 828, 86 So. 517 (1920); and J.A.E. Brabham v. Board of Supervisors of Hinds County; 54 Miss. 363 (1877), and others not listed.
Pruett v. City of Rosedale, 421 So.2d 1046, 1052-53 (1982).
ROY NOBLE LEE, Chief Justice, dissenting:
I do not agree with the majority opinion holding Mississippi Code Annotated § 11-46-1, et seq. (Supp. 1987), the Sovereign Immunity Act, to be unconstitutional and I dissent therefrom. In effect, the opinion holds every sovereign immunity act enacted by the Mississippi Legislature since the decision of this Court in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), to be unconstitutional.
As the majority acknowledges, until Pruett, supra, sovereign immunity in this State was a creature of the common law, having its genesis in the common law of England, the United Colonies of our founding fathers, the Mississippi Territory, and the body of common law adopted and enhanced by the State of Mississippi when it bloomed into statehood in December 1817 and blossomed until Pruett, supra, on November 10, 1982, when this Court, including this writer, judicially abolished sovereign immunity. The Mississippi Legislature had never addressed the principle and the decision was made prospective in order to afford the legislative and executive branches of government the opportunity to enact and approve laws on the subject beneficial to, and protective of, governmental entities and private citizens.
Periodically each year, since Pruett, supra, the Mississippi Legislature has extended and maintained in effect sovereign immunity as it existed prior to Pruett and on the date of occurrence for which the action arose.
The majority bases its opinion on the premise that (1) it requires the Court to apply legal principles which were specifically objected to in Pruett; (2) all authority under the provision of the statute is delegated to the Court to apply the "case law" on sovereign immunity as it existed on November 10, 1982; (3) while delegating to this Court the broad discretion to "browse freely" throughout case law to pick and choose from whence the substantive law of sovereign immunity shall be applied in a particular case, it contained restrictive features to the effect that only the case law *1311 existing on November 10, 1982, could be applied, thereby freezing into place the common law as it existed at a particular moment.
From the beginning of statehood, sovereign immunity has changed none at all or very little. Those changes have been made by interpretation of the common law by the Mississippi Supreme Court just as statutes enacted by the Legislature have been interpreted and expanded or restricted. At the time of the decision in Pruett v. City of Rosedale, supra, sovereign immunity and its meaning were as firmly etched and established in the law books (decisions of this Court), treatises by authors and government officials, and in the minds of citizens as graphically, as if they had been written with bold letters in the statutes enacted by the legislative branch of government. People and governments in this state affected, and to be affected by, sovereign immunity, or by the lack thereof, had no difficulty understanding its meaning and application. I reject the reasoning of the majority.
The majority quotes from The Abrogation of Sovereign Immunity in Mississippi: The Legislative Problem, 3 Miss.College Law Review, 214-220. There Mayhew stated:
... In addition, especially as to the state, there is often great geographical diversity in the providing of governmental services. Finally, the legislature must consider the many small governmental entities and their limited resources that exist here in Mississippi. [footnote omitted]
The legislature must decide whether to treat all the governmental agencies within the state in the same manner or whether to have different rules for the various governmental units... .
The legislature should also review the functions of government within the state to determine if any particular activity of government should be immunized specifically... .
Only by closely reviewing the functions of the various governmental entities can the legislature properly apply the balancing test and make the necessary judgment.
The legislative branch of government is not to be complimented for the manner in which it has addressed the sovereign immunity question nor is to be castigated for its failure to study, formulate and enact a comprehensive body of law dealing with the question of sovereign immunity, at all times having in mind the needs and requirements of the citizens of this State, the government, the governmental subdivisions, and the State's welfare.
Many statutes in this state, if not in words then certainly in principle, are a restatement of the common law. Particularly, this is so in our criminal statutes. Therefore, I do not fault the Legislature for the language in continuing sovereign immunity from year to year, because, as heretofore stated, sovereign immunity was well known to all.
I foresee that on this question and principle, the jurisprudence of this State could result in a morass of tangled litigation and injustice, which the wisdom of Solomon would be taxed to rectify. I dissent.
PRATHER, J., joins this opinion.
McRAE, Justice, dissenting:
I dissent from Section I(D) and II of the majority opinion written by Justice Banks. I disagree with the proposition set forth in Section I(D) that the legislature's revival of the case law prior to Pruett v. City of Rosedale violates Miss. Const. Art. 4. Sec. 61. That section provides as follows:
No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length.
Article 4 of our constitution governs only the legislative department of government, not the judicial branch. Furthermore, Section 61 applies to statutes passed by the legislature and makes no reference to changes in the common law. Indeed, those cases cited in the opinion refer only to the legislature's amendment and revival of statutory law. The legislative and judicial branches of our government are separate and distinct bodies. When we are called to "amend" the common law, we do so by *1312 overruling prior decisions of this Court. To hold that Section 61 applies to the common law as well as to statutory law would say that we could not overrule a case by referring to it by name only.
I further disagree with the author of Section II's suggestion we have set forth a "new rule" in our decision today and that the legislature and the political subdivisions were, in essence, misled and not given a sufficient opportunity to comply with our ruling in Pruett. Troubled as I am by the majority's prospective application of today's decision, I further question his participation in this opinion. As a member of the legislature, he actively participated in the passage of Senate Bill No. 2441,[1] to reinstate sovereign immunity and waive such immunity under certain circumstances, by discussing it and voting in favor of it. 1984 Miss.H.J. at 554. See Appendix "A". He now asserts that the statute is unconstitutional and that the legislature and political subdivisions of this state were, in effect, misled, or weren't given an opportunity to comply since we set today forth a "new rule."
The majority writer couches our decision in terms of a "new rule," liberally employing quotation marks when referencing our abrogation of sovereign immunity. Try as he may, it is not a new rule. Further, the legislature and the political subdivisions of the state were given ample warning and opportunities to adhere to our rulings. In Pruett, we stated succinctly our intentions and gave the legislature and the majority writer a two year window of opportunity to comply correctly. They did not. Who should suffer? Victims who have rights under our constitution or the legislature and the majority writer who did not follow the constitution and our directive in Pruett?
By making the decision prospective rather than retroactive, the majority writer is, in effect, giving the legislature a reprieve from its mistakes to the disadvantage of the victims. His participation is indistinguishable from that of a member of this Court voting on a case he ruled upon as a trial judge. However, I see nothing wrong with his sitting on a case where he is merely required to interpret the statute. When he takes the position that he and his colleagues have misled the political subdivisions, then it is time for him to recuse himself.
Moreover, this same author, dissenting from our decision in King v. Mississippi State Highway Department, 609 So.2d 1251 (Miss. 1992), expressed concern that the majority did violence to the mandate of our constitution to compensate citizens for damage to their property caused by the government. This case accrued around 1981, several years prior to the Presley's accident. In King, the Highway Department damaged the appellant's property, whereas in the case sub judice, Mattie Presley died, allegedly as a result of the Department's negligence. In making today's decision prospective, I perceive no similar concern for compensating those citizens who have suffered bodily injuries as a result of government negligence.
Accordingly, while I concur with Parts I(A) through I(C) of the majority opinion written by Presiding Justice Hawkins, I dissent from Part II of the decision which applies the abrogation of sovereign immunity prospectively rather than retroactively, and deprives the Presleys of their day in court and equal protection under our constitution.
If there should be any suffering, who should suffer? It should not be the victims who have suffered under the hands of the wrongdoer and the majority writer. This is nothing but discrimination of the highest order.

APPENDIX A
Mr. Stubbs called up the motion to reconsider the vote whereby the following bill passed:
*1313 S.B. No. 2441: Reinstate sovereign immunity and waive such immunity under certain circumstances.
Mr. Stubbs moved that the motion to reconsider be tabled, which motion to table prevailed by the following vote:
Yeas  Aldridge, Alford, Anderson, D.R. (89th), Atkinson, Banks, Blackmon, Brooks, Buckley, Buelow, Calhoun, Clark, E.C. (79th), Comans, Doxey, Dubaz, Ellerby, Ellis, Endris, Endt, Ford, Fortenberry, Frazier, Fredericks, Furniss, Green, D.L. (96th), Grisham, Grist, Guice, Halbrook, Hall, Hanson, Henry, Holland, Holston, Hutto, Jones, Junkin, King, Livingston, Luke, McMillan, McNatt, Merideth, Mills, Moss, Nipper, Perry, Phillips, Presley, Price, Reeves, Reynolds, Robertson, Robinson, D. (20th), Robinson, W.L. (63rd), Rogers, Santa Cruz, Schoby, Shepphard, Short, Simmons, Simpson, Singletary, Stubbs, Tate, Thomas, Townsend, Walman, Warren, Watson, Wells, Wilburn, Williams, C.V. (8th), Williams, G.B. (30th), Young. Total  74.
Nays  Anderson, R.E. (76th), Bowles, Bryan, Capps, Dobbins, Eakes, Easley, Everett, Garvin, Green, J.D. (33rd), Henderson, Hines, Holmes, Horton, Jackson, Lambert, Lancaster, Malone, Maples, McCoy, McCrary, McIngvale, Millette, Moak, Morrow, Netherland, Nunnally, Owens, Pennebaker, Poindexter, Scarborough, Scott, Stevens, Stringer, Vince, Wadkins, Wertz, Wilkerson, Woodfield. Total  39.
Absent or those not voting  Cain, Clark, R.G. (47th), Crawford, Moody, Ross, Savage, Shumake, Van Slyke, Mr. Speaker. Total  9.
1984 Miss.H.J. 554.

ON PETITION FOR REHEARING
McRAE, Justice, dissenting:
Feeling that we cannot use a cost-benefit approach in determining whether a legislative action is constitutional, I would grant the Presley's petition for rehearing on the issue of retroactivity. The message which the majority sends today should not be etched in stone for it fails to answer the pivotal question of how a legislative enactment adopted in 1985 can be declared unconstitutional and void but then made prospective, in effect, allowing an unconstitutional act to stand. Unfortunately, the majority is again attempting to protect the treasury of this State, the negligent tortfeasor, at the expense of its innocent citizens in order to protect an unconstitutional act of the Legislature.
SULLIVAN, J., joins this opinion.
HAWKINS, P.J., and SULLIVAN and McRAE, JJ., would grant.
ROBERTS, J., not participating according to Supreme Court Internal Rules.
NOTES
[1] Miss. Code Ann. § 37-5-41 and 37-7-39 (Supp. 1982); Miss. Code Ann. § 19-7-8 (Supp. 1982); Miss. Code Ann. § 21-27-17 (Supp. 1982); Miss. Code Ann. § 41-13-101 (Supp. 1982); Miss. Code Ann. § 43-33-11 (1972); Miss. Code Ann. § 49-1-60 (1982) Miss. Code Ann. § 65-1-8(p) (1982); Miss. Code Ann. § 41-29-108 (1982); Miss. Code Ann. § 63-15-3(j) (Supp. 1982); Miss. Code Ann. § 19-7-8 (1982); Miss. Code Ann. § 41-29-108 (1982); Miss. Code Ann. § 63-15-3(j) (Supp. 1982).
[2] The following cases are some of the instances in which the proprietary governmental functions of city government were noted: Ditta v. City of Clinton, 391 So.2d 627 (Miss. 1980). Nathaniel v. City of Moss Point, 385 So.2d 599 (Miss. 1980); Tucker v. City of Okolona, 227 So.2d 475 (Miss. 1969); City of West Point v. Meadows, 236 Miss. 394, 110 So.2d 372 (1959); Bishop v. City of Meridian, 223 Miss. 703, 79 So.2d 221 (1955), aff'd 223 Miss. 703, 79 So.2d 815 (1955); Bradley v. City of Jackson, 153 Miss. 136, 119 So. 811 (1928); City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846 (1918); Yazoo City v. Birchett, 89 Miss. 700, 42 So. 569 (1906). See also, Comment, A Case for the Abrogation of Municipal Tort Immunity in Mississippi, 41 Miss. L.J. 289 (1970).
[3] See cases cited in Appendix A of Pruett, 421 So.2d at 1052, and expressly overruled; see also, Mayhew, The Abrogation of Sovereign Immunity in Mississippi: The Legislative Problem, 3 Miss.College Law Review 209, fn. 11 (1983).
[4] See, Mayhew, The Abrogation of Sovereign Immunity in Mississippi, 3 Miss.College Law Review 202 at 212 (1983).
[5] Mayhew, The Abrogation of Sovereign Immunity in Mississippi: The Legislative Problem, 3 Miss.College Law Review 209 at 209 (1983).
[6] Although we are only concerned in this case with the 1987 Act, it is significant to note that each session following 1987, the Legislature has repeatedly re-enacted and postponed the application of this sovereign immunity Act; Ch. 442 (House Bill No. 937), Laws 1988; Ch. 537 (House Bill No. 339), Laws 1989; Ch. 518 (House Bill No. 945), Laws 1990; and Ch. 618 (Senate Bill No. 3242), Laws 1991. As noted in Starnes v. City of Vardaman, 580 So.2d 733, 735, the statute "has been and remains in futuro law that has never acquired a present force." After eight annual sessions of the Legislature, the courts remain in a state of suspended animation.
[7] We say in Meeks that "application of the law declared to the case at bar is ordinarily thought essential to the process of adjudication. Cf. Pruett v. City of Rosedale, 421 So.2d 1046, 1052 (Miss. 1982)." 513 So.2d at 568. There is no discussion of this issue in Pruett, however, and, as can be seen from the authorities cited in this opinion, application to the parties before the court is not universally thought essential to the adjudicatory process. In Meeks we found that application to him was not unfair because he was prevented from acting in reliance on the old rule. Id.
[1] This is the same act we are dealing with in 1987. The legislature has re-enacted it each year since 1984.